EXECUTION COPY

## FORM OF ESCROW AGREEMENT

ESCROW AGREEMENT (this "Agreement") dated as of December 30, 2005 by and among Viscern Holding Corporation, a Delaware corporation ("Purchaser"), Viscern, Inc., a Texas corporation (the "Company"), Carl W. Hefton, as Sellers' Representative (the "Sellers' Representative") on behalf of each of the Persons identified as "Sellers" in the Purchase Agreement (as defined below) (the "Sellers"), Ben G. Gill, as Gill Sellers' Representative (the "Gill Sellers' Representative") on behalf of Gill (as defined in the Purchase Agreement) and JPMorgan Chase Bank, N.A., Escrow Services, a national association (the "Escrow Agent").

WHEREAS, Sellers' Representative, Gill Sellers' Representative, the Sellers, the Company and Purchaser have entered into a Stock Purchase and Redemption Agreement dated as of the date hereof (the "Purchase Agreement"), pursuant to which Purchaser has agreed to purchase, and Sellers have agreed to sell, all of the issued and outstanding capital stock of the Company (other than the Gill Shares that are being redeemed by the Company). In accordance with the terms and subject to the conditions of the Purchase Agreement, Purchaser is depositing with the Escrow Agent certain cash amounts to be held in separate escrow accounts and disposed of as herein provided; and

WHEREAS, capitalized terms used but not otherwise defined herein shall have the respective meanings given them in the Purchase Agreement. Notwithstanding the foregoing, it is expressly understood and agreed by the parties hereto that all references herein to the Purchase Agreement are for the convenience of the parties hereto other than the Escrow Agent and the Escrow Agent shall have no obligation or duties with respect thereto.

NOW, THEREFORE, in consideration of the mutual covenants contained herein and in the Purchase Agreement and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto hereby agree as follows:

SECTION 1. Appointment of Escrow Agent. The Escrow Agent is hereby appointed to act as escrow agent hereunder, to hold in escrow the Escrowed Funds (as defined below), and to effect the disposition of the Escrowed Funds in accordance with the terms and conditions hereof, and the Escrow Agent agrees to act as such.

SECTION 2. Deposit of Escrow Funds.

(a) Promptly upon the execution of this Agreement, Purchaser shall deliver to the Escrow Agent an amount in cash equal to $2,550,000 (the "Initial Escrow Deposit" and, together with any interest earned thereon less any distributions made therefrom in accordance with this Agreement, the "Escrowed Funds")) by wire transfer of immediately available U.S. funds in accordance with the payment instructions of the Escrow Agent attached as Annex I hereto. The Escrowed Funds shall be deposited initially into an

interest bearing account and thereafter shall be invested and liquidated upon written notice from the appropriate parties in accordance with this Agreement.

(b) The Escrow Agent shall maintain, and make available to Purchaser, Sellers' Representative and Gill Sellers' Representative on a monthly basis, a statement with respect to the Escrowed Funds in form and substance as customarily provided by the Escrow Agent for escrow accounts for which it acts as escrow agent.

(c) Each Seller's portion of the Escrow Funds shall be allocated as a "Pro Rata Share" of the Initial Escrow Deposit (as set forth on Annex II hereto), together with any interest thereon less any distributions made therefrom in accordance with this Agreement, and shall be released to Purchaser only in relation to a liability of such Seller under the Purchase Agreement (and not for the liability of any other Seller thereunder).

**SECTION 3.** Escrowed Funds. The Escrow Agent shall hold the Escrowed Funds in its possession until authorized hereunder to deliver such Escrowed Funds as follows:

(a) If a Notice of Claim (as hereinafter defined) is given to the Escrow Agent, Sellers' Representative and Gill Sellers' Representative in accordance with Section 4 hereof, then the Escrow Agent shall deliver such Escrowed Funds in accordance with the provisions of Section 4 hereof.

(b) Upon receipt of a written joint instruction letter, a sample of which is attached hereto as Annex III (a "Joint Instruction Letter"), requesting the delivery of the Escrowed Funds signed on behalf of each of Purchaser, Sellers' Representative and Gill Sellers' Representative, the Escrow Agent shall deliver all or such portion of the Escrowed Funds to Purchaser, Sellers' Representative or Gill Sellers' Representative, as applicable, in such amounts and as directed in such Joint Instruction Letter.

(c) Upon receipt of a final and nonappealable award or order of a court of competent jurisdiction with respect to payment of all or any portion of the Escrowed Funds, the Escrow Agent shall deliver the amount of the Escrowed Funds specified in such award or order as directed in such award or order. Such order shall be accompanied by an opinion of independent counsel to the effect that said court award or order is final and nonappealable.

(d) The Escrowed Funds shall be used and released solely as set forth herein and as set forth in, and in all cases in accordance with, the Purchase Agreement.

(e) Upon the earlier to occur of (i) eighteen (18) months after the Closing Date or (ii) ninety (90) days after the completion of the Company's audit for the period ended September 30, 2006 and written notification to the Escrow Agent that said audit has been completed along with the date of its completion, the Escrow Agent shall deliver to Sellers' Representative (as agent for the Sellers (other than Gill)) and/or the Gill Sellers' Representative (as agent for Gill), as applicable, without any request or action by the Purchaser, the Sellers' Representative or the Gill Sellers' Representative, an amount

equal to the aggregate amount of Escrowed Funds then held hereunder for the benefit of each Seller (except for any Claim Amount (as hereinafter defined) subject to a Notice of Claim against such Seller that has not been disbursed from the Escrowed Funds of such Seller (which Claim Amount shall be disbursed from the Escrowed Funds in accordance with the resolution of such Notice of Claim).

**SECTION 4.** Notice of Claims.

(a) Purchaser may at any time and from time to time (but, as between Purchaser and Sellers, subject to the provisions of Article XII of the Purchase Agreement) during the term hereof assert one or more Claims (as defined below) for indemnification by giving written notice to Sellers' Representative, Gill Sellers' Representative and the Escrow Agent (in the form of Annex IV hereto, a "Notice of Claim"), specifying the amount, to the extent such amount is known, of such Claim or Claims ("Claim Amount") and the amount(s) from the Escrowed Funds of each Seller that are to be released to Purchaser in satisfaction of such Claim Amount, which amounts of Escrowed Funds shall be calculated by Purchaser in accordance with the applicable provisions of Article XII of the Purchase Agreement. Upon receipt of a Notice of Claim, Escrow Agent shall promptly forward a copy of such Notice of Claim to Sellers' Representative and/or Gill Sellers' Representative, as applicable. For purposes of this Escrow Agreement, the term "Claim" shall mean any right of Purchaser pursuant to Article XII of the Purchase Agreement to indemnification or payment of any amount, including, without limitation, Claims dependent on the outcome of any actual or threatened action, suit or proceeding (each, a "Covered Action").

(b) Sellers' Representative or Gill Sellers' Representative may deliver to the Escrow Agent and Purchaser prior to the twentieth (20th) Business Day following delivery of the Notice of Claim by the Escrow Agent to the Sellers' Representative or the Gill Sellers' Representative, as applicable (the "Objection Period"), a written notice (in the form of Annex V hereto, "Objection Notice") to the effect that Sellers' Representative or Gill Sellers' Representative, as applicable, disputes the fact or Claim Amount or asserts that the Claim should have been made against a different Seller, with respect to any one or more of the Claims asserted in the Notice of Claim. If an Objection Notice from Sellers' Representative or Gill Sellers' Representative is delivered to the Escrow Agent within such time period, then the Escrow Agent shall promptly forward a copy of such Objection Notice to Purchaser and refrain from making any disbursement from the Escrowed Funds of the Claim Amount or Claim Amounts specifically disputed in the Objection Notice, unless pursuant to or in accordance with: (i) a Joint Instruction Letter pursuant to Section 3(b) hereof or (ii) a final and nonappealable award or order of a court of competent jurisdiction pursuant to Section 3(c) hereof, in each case, giving the Escrow Agent instructions with respect to the disputed Claim Amount. Escrow Agent shall pay to Purchaser, no later than three (3) Business Days after Escrow Agent's receipt of any Objection Notice, any portion of the Claim Amount that is not disputed in such Objection Notice. If an Objection Notice is not timely received by the Escrow Agent, then the Escrow Agent shall, promptly upon receipt of a Release Notice in the form of Annex VI, pay to Purchaser the Claim Amount set forth in the Notice of Claim ("Release Amount")

in the manner set forth in the Notice of Claim. Any distribution from the Escrowed Funds to Purchaser in accordance with this Section 4(b) shall be made promptly after (y) receipt of written instructions accompanied by one of the items described in clauses (i) or (ii) of the second sentence of this Section 4(b), or (z) expiration of the period of time to submit an Objection Notice, provided that a Release Notice in the form of Annex VI has been received from Purchaser. Any such payment of cash by Purchaser into the Escrowed Funds shall be accompanied by a written notice by Purchaser to the Escrow Agent setting forth the amount of such returned Escrowed Funds, plus the interest accrued thereon.

SECTION 5. Investments; Disposition of Income. The Escrow Agent shall invest the Escrowed Funds, as directed in writing by Purchaser, Sellers' Representative and Gill Sellers' Representative in (i) United States' government securities or securities of agencies of the United States government which are guaranteed by the United States government, (ii) a JPMorgan Chase Bank, N.A. money market account, (iii) a trust account with JPMorgan Chase Bank, N.A. or (iv) as Purchaser, Sellers' Representative and Gill Sellers' Representative, from time to time, shall jointly instruct the Escrow Agent in writing. Any income received by the Escrow Agent from investments of the Escrowed Funds pursuant to this Section 5 shall be added to the Escrowed Funds on a proportionate basis and distributed as provided in this Agreement. In the absence of a joint written investment directive from Purchaser, Sellers' Representative and Gill Sellers' Representative, the Escrow Agent will invest the Escrowed Funds in item (ii), listed in this Section 5. Upon liquidation of an investment of the Escrowed Funds, the Escrowed Funds shall be deposited into a JPMorgan Chase Bank, N.A. money market account pending receipt of written investment instructions as provided in this Section 5 or disbursement instructions as provided in Section 3 or 4, as applicable.

SECTION 6. Concerning the Escrow Agent.

(a) The Escrow Agent shall not be required to invest any funds held hereunder except as directed pursuant to Section 5 of this Agreement. Uninvested funds held hereunder shall not earn or accrue interest.

(b) This Agreement expressly sets forth all the duties of the Escrow Agent with respect to any and all matters pertinent hereto. No implied duties or obligations shall be read into this Agreement against the Escrow Agent. The Escrow Agent shall not be bound by the provisions of any agreement among the other parties hereto except this Agreement. The Escrow Agent's duties are ministerial in nature.

(c) The Escrow Agent shall not be liable, except for its own gross negligence or willful misconduct, and, except with respect to claims based upon such gross negligence or willful misconduct that are successfully asserted against the Escrow Agent, the other parties hereto shall jointly and severally indemnify and hold harmless the Escrow Agent (and any successor Escrow Agent) from and against any and all losses, liabilities, claims, actions, taxes, damages and expenses, including reasonable attorneys' fees and disbursements, arising out of or in connection with this Agreement including the legal costs and expenses of defending itself against any claim or liability in connection with its

performance hereunder. Without limiting the foregoing, the Escrow Agent shall in no event be liable in connection with its investment or reinvestment of any cash held by it hereunder in good faith, in accordance with the terms hereof, or as a result of any liquidation of any such investment prior to its maturity, including any liability for any delays (not resulting from its gross negligence or willful misconduct) in the investment or reinvestment of the Escrowed Funds, or any loss of interest incident to any such delays or for the failure of the parties to give the Escrow Agent any instructions to invest or reinvest the escrowed funds or any earnings thereon. The Escrow Agent shall be entitled to rely upon any order, judgment, certification, demand, notice, instrument or other writing delivered to it hereunder without being required to determine the authenticity or the correctness of any fact stated therein or the propriety or validity or the service thereof. The Escrow Agent may act in reliance upon any instrument or signature believed by it to be genuine and may assume that any person purporting to give notice or receipt or advice or make any statement or execute any document in connection with the provisions hereof has been duly authorized to do so.

(d) Purchaser, the Sellers' Representative and Gill Sellers' Representative shall jointly and severally indemnify, defend and save harmless the Escrow Agent and its directors, officers, agents and employees (the "Indemnitees") from all loss, liability or expense (including the reasonable fees and expenses of in house or outside counsel) arising out of or in connection with (i) the Escrow Agent's execution and performance of this Agreement, except in the case of any Indemnitee to the extent that such loss, liability or expense is due to the gross negligence or willful misconduct of such Indemnitee, or (ii) its following any instructions or other directions from Purchaser, Sellers' Representative or Gill Sellers' Representative, except to the extent that its following any such instruction or direction is in contravention of the terms hereof. The parties hereto acknowledge that the foregoing indemnities shall survive the resignation or removal of the Escrow Agent or the termination of this Agreement. The parties hereby grant the Escrow Agent a lien on, right of set-off against and security interest in the Escrowed Funds for the payment of any claim for indemnification, compensation, expenses and amounts due hereunder.

(e) Anything in this Agreement to the contrary notwithstanding, in no event shall the Escrow Agent be liable for special, indirect or consequential loss or damage of any kind whatsoever (including but not limited to lost profits), even if the Escrow Agent has been advised of the likelihood of such loss or damage and regardless of the form of action. The parties hereto hereby acknowledge that the provisions of Sections 6(b), (c) and (d) hereof do not modify the rights and obligations of the Sellers, Gill or Purchasers as to each other under this Agreement, the Purchase Agreement or any of the Related Documents.

(f) The Escrow Agent may act pursuant to the advice of counsel with respect to any matter relating to this Agreement and shall not be liable for any action taken or omitted in accordance with such advice.

(g) The Escrow Agent does not have any interest in the Escrowed Funds deposited hereunder but is serving as escrow agent only and having only possession thereof. Following execution of this Agreement, Purchaser, Sellers' Representative and

Gill Sellers' Representative shall provide the Escrow Agent with a fully executed Internal Revenue Service Form W-9. For U.S. federal income tax purposes, all parties hereto agree to treat Purchaser as owner of the Escrowed Funds (including any portion thereof that is invested or reinvested under the terms of this Agreement), and any earnings on such Escrowed Funds, which shall be allocated to Purchaser and reported by the Escrow Agent, to the extent required, to the Internal Revenue Service and any other taxing authority.

(h) The Escrow Agent makes no representation as to the validity, value, genuineness or the collectability of any security or other documents or instrument held by or delivered to it.

(i) The Escrow Agent shall not be called upon to advise any party as to the wisdom in selling or retaining or taking or refraining from any action with respect to any securities or other property deposited hereunder.

(j) The Escrow Agent (and any successor Escrow Agent) may at any time resign as such by delivering the Escrowed Funds to any successor Escrow Agent jointly designated by the other parties hereto in writing, or to any court of competent jurisdiction, whereupon the Escrow Agent shall be discharged of and from any and all further obligations arising in connection with this Agreement. The resignation of the Escrow Agent shall take effect on the earlier of (i) the appointment of a successor (including a court of competent jurisdiction) or (ii) the day which is 30 days after the date of delivery of its written notice of resignation to the other parties hereto. If at that time the Escrow Agent has not received a designation of a successor Escrow Agent, the Escrow Agent's sole responsibility after that time shall be to safekeep the Escrowed Funds until receipt of a designation of successor Escrow Agent or a joint written disposition instruction by the other parties hereto or a final and nonappealable order of a court of competent jurisdiction.

(k) The Escrow Agent shall have no responsibility for the contents of any court order and may rely without any liability upon the contents thereof.

(l) In the event of any disagreement between Purchaser and any Seller, Sellers' Representative, on behalf of any Seller (other than Gill) or Gill Sellers' Representative, on behalf of Gill, resulting in adverse claims or demands being made in connection with the Escrowed Funds, or in the event that the Escrow Agent in good faith is in doubt as to what action it should take hereunder, the Escrow Agent shall be entitled to refrain from taking any action and its sole obligation shall be to keep safely all property held under the terms of this Escrow Agreement until the Escrow Agent shall have received (i) a final nonappealable order of a court of competent jurisdiction directing delivery of the Escrowed Funds or (ii) a written joint instruction letter executed by Purchaser, Sellers' Representative and Gill Sellers' Representative directing delivery of the Escrowed Funds, in which event the Escrow Agent shall disburse the Escrowed Funds in accordance with such order or instruction letter. The Escrow Agent shall act on such court order without further question.

(m) The Escrow Agent shall be paid $3,500 annually, without pro ration for partial years, which compensation shall be paid one-half by the Sellers' Representative (on behalf of the Sellers, in accordance with each such Seller's Pro Rata Share), and one-half by Purchaser. No increase in the rate of any fee charged by the Escrow Agent shall be valid hereunder unless previously approved in writing by Purchaser, Sellers' Representative and Gill Sellers' Representative. All fees shall be paid in United States currency and payable in the United States at the office of the Escrow Agent set forth in Section 7. Initial years fee is due upon execution of this Agreement.

**SECTION 7.** Notices. All notices or other communications required or permitted to be given hereunder shall be in writing and shall be delivered by hand or sent by facsimile, or sent, postage prepaid, by registered, certified or express mail, or overnight courier service and shall be deemed given when so delivered by hand or facsimile, or if mailed, three days after mailing (one business day in the case of express mail or overnight courier service), as follows:

(a) if to Purchaser, to:

> Viscern Holding Corporation
> c/o Flinn Investments, L.P.
> Three Greenwich Office Park, 2nd Floor
> Greenwich, CT 06831
> Attn: John Henry Moulton
> Facsimile: (203) 869-2056

> with a copy to

> King & Spalding LLP
> 1185 Avenue of the Americas
> New York, New York 10036
> Attention: Dominick P. DeChiara
> Telephone: (212) 827-4098
> Facsimile: (212) 556-2222;

(b) If to the Sellers or the Sellers' Representative other than Gill, to the Sellers' Representative to:

> Carl W. Hefton
> 5151 Belt Line Road, Suite 900
> Dallas, TX 75254
> Facsimile: (214) 866-7751

with a copy to:

Thompson & Knight LLP
1700 Pacific Avenue, Suite 3300
Dallas, TX 75201
Attn: Amy R. Curtis
Facsimile: (214) 969-1751

    (c) If to Gill or the Gill Sellers' Representative, to the Gill Sellers' Representative, to:

Ben G. Gill
5208 Briar Tree
Dallas, Texas 75248
Facsimile: (972) 931-0898

and

Ben G. Gill
P.O. Box 8818
Avon, Colorado 81620

and

gillholly2@aol.com

With a copy to:

Munsch Hardt Kopf & Harr, P.C.
3800 Lincoln Plaza
500 N. Akard Street
Dallas, Texas 75202
Attn: Sally A. Schreiber
Facsimile: (214) 978-4323

    (d) if to the Escrow Agent, to:

JPMorgan Escrow Services
4 New York Plaza, 21st Floor
New York, NY 10004
Attention: Florence Hanley
Telephone: (212) 623-6811
Telecopy: (212) 623-6380

**Security Procedures.**  In the event funds transfer instructions are given (other than in writing) at the time of execution of this Agreement, whether in writing or by telecopier, the Escrow Agent is authorized to seek confirmation of such instructions by telephone

call-back to the person or persons designated on <u>Schedule 1</u> hereto, and the Escrow Agent may rely upon the confirmation of anyone purporting to be the person or persons so designated. Each funds transfer instruction shall be executed by an authorized signatory, a list of such authorized signatories is set forth on Schedule 2. The undersigned is authorized to certify that the signatories on Schedule 2 are authorized signatories. The persons and telephone numbers for call-backs may be changed only in a writing actually received and acknowledged by the Escrow Agent. If the Escrow Agent is unable to contact any of the authorized representatives identified in <u>Schedule 1</u>, the Escrow Agent is hereby authorized to seek confirmation of such instructions by telephone call-back to any one or more of the applicable party's executive officers, to the extent practicable ("<u>Executive Officers</u>"), which shall include the titles of President or Managing Director, as the Escrow Agent may select. Such Executive Officer shall deliver to the Escrow Agent a fully executed certificate attesting to the incumbency and signature of such Executive Officer, and the Escrow Agent may rely upon the confirmation of anyone purporting to be any such officer. The Escrow Agent and the beneficiary's bank in any funds transfer may rely solely upon the account numbers or similar identifying numbers provided by Purchaser, the Sellers' Representative or Gill Sellers' Representative to identify (i) the beneficiary, (ii) the beneficiary's bank or (iii) an intermediary bank. The Escrow Agent may apply any of the Escrowed Funds of a Seller for any payment order it executes using any such identifying number, even when its use may result in a person other than the beneficiary being paid, or the transfer of funds to a bank other than the beneficiary's bank or an intermediary bank designated. The parties to this Agreement acknowledge that these security provides are commercially reasonable.

SECTION 8. <u>Termination</u>. This Agreement shall automatically terminate upon the complete distribution of the Escrowed Funds in accordance with the terms hereof.

SECTION 9. <u>Miscellaneous</u>.         Except as provided in Section 9(h), this Agreement and the rights and obligations hereunder shall not be assignable or transferable by any party (including by operation of law in connection with a merger or consolidation of such party, but excluding transfers by reason of death or disability) without the prior written consent of the other parties hereto. Any attempt to assign or transfer this Agreement in violation of this Section 9(a) shall be void.

(b) This Agreement is for the sole benefit of the parties hereto and their permitted heirs, successors and assigns and nothing herein expressed or implied shall give or be construed to give to any person, other than the parties hereto and such heirs, successors and assigns, any legal or equitable rights hereunder.

(c) This Agreement may be executed in one or more counterparts, all of which shall be considered one and the same agreement, and shall become effective when one or more such counterparts have been signed by each of the parties and delivered to the other parties.

(d) This Agreement contains the entire agreement and understanding among the parties hereto with respect to the subject matter hereof and supersedes all prior agreements and understandings relating to such subject matter.

(e) Each party irrevocably submits to the exclusive jurisdiction of (i) the Supreme Court of the State of New York, New York County, and (ii) the United States District Court for the Southern District of New York, for the purposes of any suit, action or other proceeding arising out of this Agreement or any transaction contemplated hereby. Each party agrees to commence any such action, suit or proceeding either in the United States District Court for the Southern District of New York or if such suit, action or other proceeding may not be brought in such court for jurisdictional reasons, in the Supreme Court of the State of New York, New York County. Each party agrees that service of any process, summons, notice or document by U.S. registered mail to such party's respective address set forth above shall be effective service of process for any action, suit or proceeding in New York with respect to any matters to which it has submitted to jurisdiction in this Section 9(e). Each party irrevocably and unconditionally waives any objection to the laying of venue of any action, suit or proceeding arising out of this Agreement or the transactions contemplated hereby in (A) the Supreme Court of the State of New York, New York County or (B) the United States District Court for the Southern District of New York, and hereby and thereby further irrevocably and unconditionally weighs and agrees not to plead or claim in any such court that any such action, suit or proceeding brought in such court has been brought in any such court has been brought in an inconvenient forum.

(f) This Agreement shall be governed by and construed in accordance with the internal laws of the State of New York applicable to agreements made and to be performed entirely within such State.

(g) Each party hereby waives to the fullest extent permitted by applicable law, any right it may have to a trial by jury in respect to any litigation directly or indirectly arising out of, under or in connection with the Agreement or any transaction contemplated hereby. Each party (i) certifies that no representatives, agent or attorney of any other party has represented, expressly or otherwise, that such other party would not, in the event of litigation, seek to enforce the foregoing waiver and (ii) acknowledges that it and the other parties hereto have been induced to enter into this agreement by, among other things, the mutual waivers and certifications in this Section 9(g).

(h) The Escrowed Funds shall be for the exclusive benefit of Purchaser, Sellers' Representative (on behalf of the Sellers other than Gill) and Gill Sellers' Representative (on behalf of Gill) and their respective heirs, successors and assigns, and no other Person shall have any right, title or interest therein; *provided, however,* that the Purchaser may assign any or all rights, obligations and interests hereunder to any Affiliate of Purchaser or as security for any obligations arising in connection with the financing of the transactions contemplated hereunder. Any claim of any Person to the Escrowed Funds, or any part thereof, shall be subject and subordinate to the prior right thereto of Purchaser, Sellers' Representative (on behalf of the Sellers other than Gill) and Gill Sellers' Representative (on behalf of Gill).

(i) No party to this Agreement is liable to any other party for losses due to, or if it is unable to perform its obligations under the terms of this Agreement because of, acts of

G-d, fire, floods, strikes, equipment or transmission failure, or other causes reasonably beyond its control.

(j) Any corporation or association into which the Escrow Agent may be merged or converted or with which it may be consolidated, or any corporation or association to which all or substantially all the escrow business of the Escrow Agent's corporate trust line of business may be transferred, shall be the Escrow Agent under this Depository Agreement without further act.

**Account Opening Information/TINs.**

IMPORTANT INFORMATION ABOUT PROCEDURES FOR OPENING A NEW ACCOUNT

For accounts opened in the US:
To help the government fight the funding of terrorism and money laundering activities, Federal law requires all financial institutions to obtain, verify, and record information that identifies each person who opens an account. When an account is opened, we will ask for information that will allow us to identify relevant parties.

[signature page follows]

11

**IN WITNESS WHEREOF**, the parties hereto have duly executed this Escrow Agreement as of the date first above written.

**PURCHASER**

**VISCERN HOLDING CORPORATION**

By: _____

     Name:

     Title:

**COMPANY**

**VISCERN, INC.**, a Texas corporation

By: _____

     Name:

     Title:

**SELLERS' REPRESENTATIVE**

By:_____

     Carl W. Hefton, as Sellers' Representative

**GILL SELLERS' REPRESENTATIVE**

By:_____

     Ben G. Gill, as Gill Sellers' Representative

**IN WITNESS WHEREOF,** the parties hereto have duly executed this Escrow Agreement as of the date first above written.

**PURCHASER**

**VISCERN HOLDING CORPORATION**

By: _____

      Name:

      Title:

**COMPANY**

**VISCERN, INC.,** a Texas corporation

By: _____

      Name: Carl W. Hefton

      Title: Pres & CEO

**SELLERS' REPRESENTATIVE**

By: _____

      Carl W. Hefton, as Sellers' Representative

**GILL SELLERS' REPRESENTATIVE**

By: _____

      Ben G. Gill, as Gill Sellers'
      Representative

**ESCROW AGENT**

**JPMORGAN CHASE BANK, N.A.**
**ESCROW SERVICES**

By: _____

Name:  Michael Kuzmiez
Title:   Vice President

## ANNEX I

### Wiring Instructions

JPMorgan Chase Bank N.A.
ABA: 021000021
Account No. 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, Escrow Incoming Account
For further credit to A/C No.10225196, Viscern Escrow Agreement
Attention: Florence Hanley
Tel: (212) 623-6811

## ANNEX II

| SELLER | PRO RATA SHARE |
|---|---|
| Ben Gill | 32.10% |
| Briar Tree Ltd. | 16.05% |
| Carl Hefton | 44.16% |
| Doug Turner | 1.54% |
| Troy Fields | 1.15% |
| Richard Blackmon | 1.15% |
| Bob Carter | 0.77% |
| Dale Kesler | 0.77% |
| Richard Caperton | 0.77% |
| Dan Conway | 0.77% |
| Elliott S. Oshry | 0.77% |

**ANNEX III**
**Form of Joint Instruction Letter**

[DATE]

JP Morgan Chase Bank, N.A. Escrow Services
4 New York Plaza, 21st Floor
New York, N.Y. 10004
Attention: Florence Hanley

Dear Sir or Madam:

Reference is hereby made to that certain Escrow Agreement (the "Escrow Agreement"), dated as of December 30, 2005 by and among Viscern Holding Corporation, a Delaware corporation ("Purchaser"), Viscern, Inc., a Texas corporation (the "Company"), Carl W. Hefton, as Sellers' Representative (the "Sellers' Representative") on behalf of each of the Persons identified as "Sellers" in the Purchase Agreement other than Gill (the "Sellers"), Ben G. Gill, as Gill Sellers' Representative (the "Gill Sellers' Representative") on behalf of Gill (as defined in the Purchase Agreement) and JPMorgan Chase Bank, N.A., Escrow Services, a national association (the "Escrow Agent").  Capitalized terms used herein and not otherwise defined shall have the respective meanings assigned to such terms in the Escrow Agreement.

The undersigned parties hereby direct, pursuant to Section [_____] of the Escrow Agreement, that the Escrow Agent deliver [$_____] of the Escrowed Funds on behalf of _____ ("Seller") to [          ] to come out of Seller's Pro Rata Share of the Escrowed Funds [include instruction as to which investment the funds are to be paid out of].

Sellers' Representative

By: _____
    Carl W. Hefton, as Sellers' Representative

Gill Sellers' Representative

By: _____
    Ben G. Gill, as Gill Sellers' Representative

Viscern Holding Corporation

By: _____
Name:
Title:

## ANNEX IV

### Form of Notice of Claim

[DATE]

JP Morgan Chase Bank, N.A. Escrow Services
4 New York Plaza, 21st Floor
New York, N.Y. 10004
Attention: Florence Hanley

Carl W. Hefton
5151 Belt Line Road, Suite 900
Dallas, TX  75254

Thompson & Knight LLP
1700 Pacific Avenue, Suite 3300
Dallas, TX 75201
Attn: Amy R. Curtis

Ben G. Gill                              Ben G. Gill
5208 Briar Tree                          P.O. Box 8818
Dallas, Texas  75248                     Avon, Colorado 81620
gillholly2@aol.com
Facsimile:  (972) 931-0898

Munsch Hardt Kopf & Harr, P.C.
3800 Lincoln Plaza
500 N. Akard Street
Dallas, Texas 75202
Attn:  Sally A. Schreiber
Facsimile:  (214) 978-4323

Dear Sir or Madam:

Reference is hereby made to that certain Escrow Agreement (the "Escrow Agreement"), dated as of December 30, 2005 by and among Viscern Holding Corporation, a Delaware corporation ("Purchaser"), Viscern, Inc., a Texas corporation (the "Company"), Carl W. Hefton, as Sellers' Representative (the "Sellers' Representative") on behalf of each of the Persons identified as "Sellers" in the Purchase Agreement other than Gill (the "Sellers"), Ben G. Gill, as Gill Sellers' Representative (the "Gill Sellers' Representative") on behalf of Gill (as defined in the Purchase Agreement) and JPMorgan Chase Bank, N.A., Escrow Services, a national association (the "Escrow Agent").  Capitalized terms used herein and not otherwise defined shall have the respective meanings assigned to such terms in the Escrow Agreement.

Pursuant to Section 4 of the Escrow Agreement, Purchaser hereby gives notice to the Escrow Agent, Sellers' Representative and Gill Sellers' Representative of the following Claim:

[*Describe the nature of the Claim.*] [*List the amount of the Claim (including the cost of defense in connection with a Covered Action and which Seller it applies to.*]

IN WITNESS WHEREOF, the undersigned has caused the execution of this Notice of Claim on _____ __, 20__.].

Viscern Holding Corporation

By: _____
Name:
Title:

## ANNEX V

### Form of Objection Notice

[DATE]

JP Morgan Chase Bank, N.A. Escrow Services
4 New York Plaza, 21st Floor
New York, N.Y. 10004
Attention: Florence Hanley

Viscern Holding Corporation
c/o Flinn Investments, L.P.
Three Greenwich Office Park, 2nd Floor
Greenwich, CT 06831
Attn: John Henry Moulton

King & Spalding LLP
1185 Avenue of the Americas
New York, New York 10036
Attention: Dominick P. DeChiara

Dear Sir or Madam:

Reference is hereby made to that certain Escrow Agreement (the "Escrow Agreement"), dated as of December 30, 2005 by and among Viscern Holding Corporation, a Delaware corporation ("Purchaser"), Viscern, Inc., a Texas corporation (the "Company"), Carl W. Hefton, as Sellers' Representative (the "Sellers' Representative") on behalf of each of the Persons identified as "Sellers" in the Purchase Agreement other than Gill (the "Sellers"), Ben G. Gill, as Gill Sellers' Representative (the "Gill Sellers' Representative") on behalf of Gill (as defined in the Purchase Agreement) and JPMorgan Chase Bank, N.A., Escrow Services, a national association (the "Escrow Agent"). Capitalized terms used herein and not otherwise defined shall have the respective meanings assigned to such terms in the Escrow Agreement.

Pursuant to Section 4 of the Escrow Agreement, [Sellers' Representative][Gill Sellers' representative] hereby gives notice to the Escrow Agent and Purchaser of the following objection to a Claim made by Purchaser:

[*Describe the Claim being disputed, including the date of the related Notice of Claim.*] [*Describe the nature of the objection, including the amount of the Claim, or portion thereof, being disputed or the fact that the claim was made against the wrong party.*]

IN WITNESS WHEREOF, the undersigned has caused the execution of this Objection Notice on _____ __, 20__.

Sellers' Representative

By: _____
    Carl W. Hefton, as Sellers' Representative


Gill Sellers' Representative

By: _____
    Ben G. Gill, as Gill Sellers' Representative

<u>**ANNEX VI**</u>

**Form of Claim Release Notice**

[DATE]

JP Morgan Chase Bank, N.A. Escrow Services
4 New York Plaza, 21st Floor
New York, N.Y. 10004
Attention: Florence Hanley

Dear Sir or Madam:

Reference is hereby made to that certain Escrow Agreement (the "Escrow Agreement"), dated as of December 30, 2005 by and among Viscern Holding Corporation, a Delaware corporation ("Purchaser"), Viscern, Inc., a Texas corporation (the "Company"), Carl W. Hefton, as Sellers' Representative (the "Sellers' Representative") on behalf of each of the Persons identified as "Sellers" in the Purchase Agreement other than Gill (the "Sellers"), Ben G. Gill, as Gill Sellers' Representative (the "Gill Sellers' Representative") on behalf of Gill (as defined in the Purchase Agreement) and JPMorgan Chase Bank, N.A., Escrow Services, a national association (the "Escrow Agent"). Capitalized terms used herein and not otherwise defined shall have the respective meanings assigned to such terms in the Escrow Agreement.

The undersigned, acting in accordance with Section 4 of the Escrow Agreement, has asserted a Claim in the Claim Amount of $_____ ("Release Amount") against _____ ("Seller"). Purchaser hereby, irrevocably and unconditionally instructs and directs the Escrow Agent to release the Release Amount through release to Purchaser of $_____ from such Seller's portion of the Escrowed Funds [include instruction as to which investment the funds are to be paid out of]. Remittance of cash shall be by wire transfer per the wire instructions set forth on Exhibit I to this Notice.

IN WITNESS WHEREOF, the undersigned has caused the execution of this Release Notice on _____ __, 20__.

Viscern Holding Corporation

By: _____
    Name:
    Title:

Exhibit I

to

<u>FORM OF CLAIM RELEASE NOTICE</u>

(Wiring Instructions)

## SCHEDULE 1

Telephone Number(s) and signature(s) for
Person(s) Designated to Confirm Funds Transfer Instructions

If to Purchaser:

| Name | Telephone Number | Signature |
|------|------------------|-----------|
| 1. Thomas Drechsler | (203) 869-2056 | |
| 2. John Henry Moulton | (203) 869-2056 | |
| 3. _____ | _____ | |

If to Sellers' Representative:

| Name | Telephone Number | Signature |
|------|------------------|-----------|
| 1. _____ | _____ | _____ |
| 2. _____ | _____ | _____ |
| 3. _____ | _____ | _____ |

If to Gill Sellers' Representative:

| Name | Telephone Number | Signature |
|------|------------------|-----------|
| 1. Ben G. Gill | (970) 926-4027 or (972) 467-0750 | _____ |
| 2. _____ | _____ | _____ |
| 3. _____ | _____ | _____ |

Telephone Number(s) for Call-Backs and

Person(s) Designated to Confirm Funds Transfer Instructions

If to Purchaser:

| Name | Telephone Number |
|------|------------------|
| 1. Thomas Drechsler | (203) 869-2056 |
| 2. John Henry Moulton | (203) 869-2056 |
| 3. _____ | _____ |

## SCHEDULE 1

**Telephone Number(s) and signature(s) for
Person(s) Designated to Confirm Funds Transfer Instructions**

If to Purchaser:

| | Name | Telephone Number | Signature |
|---|---|---|---|
| 1. | Thomas Drechsler | (203) 869-2056 | |
| 2. | John Henry Moulton | (203) 869-2056 | |
| 3. | _____ | _____ | _____ |

If to Sellers' Representative:

| | Name | Telephone Number | Signature |
|---|---|---|---|
| 1. | _____ | _____ | _____ |
| 2. | _____ | _____ | _____ |
| 3. | _____ | _____ | _____ |

If to Gill Sellers' Representative:

| | Name | Telephone Number | Signature |
|---|---|---|---|
| 1. | Ben G. Gill | (970) 926-4027 or (972) 467-0750 | _____ |
| 2. | _____ | _____ | _____ |
| 3. | _____ | _____ | _____ |

**Telephone Number(s) for Call-Backs and**

**Person(s) Designated to Confirm Funds Transfer Instructions**

If to Purchaser:

| | Name | Telephone Number |
|---|---|---|
| 1. | Thomas Drechsler | (203) 869-2056 |
| 2. | John Henry Moulton | (203) 869-2056 |
| 3. | _____ | _____ |

## SCHEDULE 1

**Telephone Number(s) and signature(s) for
Person(s) Designated to Confirm Funds Transfer Instructions**

If to Purchaser:

| Name | Telephone Number | Signature |
|------|-----------------|-----------|
| 1. Thomas Drechsler | (203) 869-2056 | |
| 2. John Henry Moulton | (203) 869-2056 | |
| 3. _____ | _____ | _____ |

If to Sellers' Representative:

| Name | Telephone Number | Signature |
|------|-----------------|-----------|
| 1. Carl W. Hefton | 214-866-7780 / 214-212-6694 / 972-732-6721 | Carl W. Hefton |
| 2. _____ | _____ | _____ |
| 3. _____ | _____ | _____ |

If to Gill Sellers' Representative:

| Name | Telephone Number | Signature |
|------|-----------------|-----------|
| 1. Ben G. Gill | (970) 926-4027 or (972) 467-0750 | [signature] |
| 2. _____ | _____ | _____ |
| 3. _____ | _____ | _____ |

**Telephone Number(s) for Call-Backs and**

**Person(s) Designated to Confirm Funds Transfer Instructions**

If to Purchaser:

| Name | Telephone Number |
|------|-----------------|
| 1. Thomas Drechsler | (203) 869-2056 |
| 2. John Henry Moulton | (203) 869-2056 |
| 3. _____ | _____ |

If to Sellers Representative:

| Name | Telephone Number | Signature |
|------|------------------|-----------|
| 1. Carl W. Hefton | 214-866-7280<br>214-212-6694<br>972-732-6721 | Cal W. Hefta |
| 2. | | |
| 3. | | |

If to Gill Sellers' Representative:

| Name | Telephone Number | Signature |
|------|------------------|-----------|
| 1. Pen G. Gill | 970-926-4027<br>972-467-0750 | |
| 2. | | |
| 3. | | |

Telephone call-backs shall be made to each Purchaser, Gill Sellers' Representative and Sellers' Representative if joint instructions are required pursuant to this Agreement. All funds transfer instructions must include the signature of the person(s) authorizing said funds transfer.