# SUPREME COURT OF THE STATE OF NEW YORK — NEW YORK COUNTY

PRESENT: _____  PART  11

Index Number : 600575/2007
VISCERN HOLDING CORP.
vs
HEFTON, CARL W.
Sequence Number : 001
DISMISS ACTION

INDEX NO. _____

MOTION DATE _____

MOTION SEQ. NO. _____

MOTION CAL. NO. _____

The following papers, numbered 1 to _____ were read on this motion to/for _____

|  | PAPERS NUMBERED |
|---|---|
| Notice of Motion/ Order to Show Cause — Affidavits — Exhibits ... | |
| Answering Affidavits — Exhibits | |
| Replying Affidavits | |

**Cross-Motion:** ☐ Yes  ☒ No

Upon the foregoing papers, it is ordered that this motion is decided in accordance with the annexed Memorandum Decision + Order.

MOTION/CASE IS RESPECTFULLY REFERRED TO JUSTICE FOR THE FOLLOWING REASON(S):

Dated: August 1, 2007

_____, J.S.C.

Check one: ☒ FINAL DISPOSITION    ☐ NON-FINAL DISPOSITION

Check if appropriate:  ☐ DO NOT POST    ☐ REFERENCE

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK, PART 11
----------------------------------------------------------------X
VISCERN HOLDING CORP.,

                            Plaintiff,

    -against-

CARL W. HEFTON

                            Defendant.
----------------------------------------------------------------X

Index No. 600575/07

        Defendant Carl W. Hefton ("Hefton") moves to dismiss the complaint for failure to state a claim based on documentary evidence. Plaintiff Viscern Holding Corp. ("Holding") opposes the motion, which is granted for the reasons below.

## Background

        The following facts are based on the allegations in the complaint and the documentary evidence submitted on the motion.

        Hefton, an individual and former resident of Texas,[1] was hired in 1986 as the Chief Financial Officer of RSI, a former subsidiary of Holding. Hefton subsequently became the Chief Executive Officer of RSI's parent company, RSI Holdings, which later changed its name to Viscern, Inc ("Viscern"). Holding was created to purchase all of Viscern's outstanding capital stock. Hefton, as a shareholder in Viscern, sold his stock to Holding in this transaction. On December 30, 2005, Hefton entered into a Stockholders' Agreement with Holding and an Employment Agreement with Viscern. Pursuant to Section 3(e) of the Employment Agreement, any termination by Viscern for cause or without cause must be communicated to the other party by a written "Notice of Termination," which must:

---

[1] Hefton does not dispute he consented to this court's jurisdiction over him in a Stockholders' Agreement discussed below.

1

> (i) indicate[] the specific termination provision in this Agreement relied upon, (ii) to the extent applicable, set[] forth in reasonable detail the facts and circumstances claimed to provide a basis for termination of the Employee's employment under the provision so indicated and (iii) if the date of termination is other than the date of receipt of such notice, specif[y] the termination date....

Pursuant to the Stockholders' Agreement, Hefton was named the owner of 174,562 shares of Holding, which amounted to approximately a 17.5% ownership interest in the company, while Holding reserved the right to repurchase its shares held by Management Stockholders, including Hefton, under specified circumstances. Section 3.3(a) of the Stockholders' Agreement provides, in relevant part:

> Management Stockholder Terminated for Cause. In the event that a Management Stockholder's employment with Viscern is *terminated for Cause* at any time after the date hereof, the Corporation (i.e. Holding)(or its designee) shall have the right (but not the obligation), upon delivery of a Repurchase Notice to such Management Stockholder *no later than thirty (30) days after such termination of employment*, to repurchase from such Management Stockholder...all or any part of the Management Stockholder Shares owned by such Management Stockholder...at any time (a "For Cause Repurchase Right") (emphasis supplied).

On September 14, 2006, Holding sent a letter (the "September 14 letter") to Hefton that began with the following paragraph:

> Viscern, Inc. a Texas company (the "Company"), hereby notifies you that you are terminated from your position as the Chief Executive Officer of the Company and all other positions held as an agent, employee, manager and officer of the Company effective immediately....

The letter then outlines the terms of Hefton's termination, including unpaid salary, the continuation of benefit plans, and releases discharging Holding from any liability arising from the termination. A "Confidential Consulting Agreement" was also annexed to the letter.

2

On October 16, 2006, Holding sent a second letter (the "October 16 letter") similar to the September 14 letter to Hefton regarding his employment with Viscern. It began:

> The Board of Directors of Viscern, Inc. a Texas company (the "Company"), previously notified you on September 14th that you were terminated from your position as the Chief Executive Officer of the Company and all other positions held as an agent, employee, manager and officer of the Company effective as of such date....

The October 16 letter contained virtually the same terms as the September 14 letter, with the addition of the following paragraph that was intended to serve as a Repurchase Notice:

> You...acknowledge and agree that this [letter] shall constitute a Repurchase Notice (as defined in the Stockholders Agreement) by the Company of its intention to exercise its repurchase right under Section 3.3 of the Stockholders Agreement with respect to all of the Management Stockholders Shares (as defined in the Stockholders Agreement) owned by you.

On December 8, 2006, the results of an internal audit ordered by Viscern relating to Hefton's conduct during his tenure as CEO reported that Hefton had "abused his authority as...Chief Executive Officer and may have violated Viscern's established policies regarding expense reimbursement..." (Holding Exhibit D). On December 19, 2006, Holding sent a third letter (the "December 19 letter") similar to the previous two to Hefton. It began:

> The Board of Directors...of Viscern Holding Corporation, a Delaware corporation...on behalf of Viscern, Inc., a Texas company (the "Company"), previously notified you on September 14th (the "Separation Date") that you were terminated from your position as the Chief Executive Officer of the Company and all other positions held as an agent, employee, manager and officer of the Company effective as of the Separation Date.

The December 19 letter included the same terms as the October 16 letter with the addition of the price that Holding would pay to repurchase Hefton's Holding shares and a confidentiality clause.

On February 16, 2007, Viscern's Board sent a letter (the "February 16 letter") to Hefton informing him that he was being terminated for cause from his position as CEO based on the audit's findings. The February 16 letter also included a section in which Viscern notified Hefton of its intent to exercise its stock repurchase right under Section 3.3(a) of the Stockholders' Agreement on the grounds that Hefton was being terminated for cause. Hefton refused to comply with Viscern's For Cause Repurchase Right on the grounds that Viscern did not timely comply with Section 3.3(a).

Holding brought this lawsuit to compel Hefton to comply with the Repurchase Notice in the February 16 letter. While the October 16 and December 19 letters refer to the right to repurchase, Holding alleges in the complaint and argues here that the notice was first given in the February 16 letter and that the October 16 and December 19 letters as well as the September 14 letter were settlement proposals. Holding's complaint contains four causes of action (declaratory relief, specific performance, breach of contract and unjust enrichment), all of which relate to Hefton's failure to sell back his shares to Holding pursuant to the Stockholders' Agreement Section 3.3(a).

Hefton moves to dismiss the complaint on the grounds that Viscern's September 14, 2006 letter unequivocally terminated him as of that date, and that the February 16 letter containing the repurchase notice does not comply with Section 3.3(a) since it was received more than thirty (30) days after his purported termination. Hefton maintains that the February 16 letter constitutes an attempt by Holding to manipulate the terms of

4

the Stockholders' Agreement by purporting to re-terminate Hefton in order to benefit from the thirty (30) day repurchase period outlined in Section 3.3(a).

In support of his motion, Hefton submits his affidavit, The Stockholders' Agreement, and the three letters from Viscern to Hefton dated September 14, October 16, and December 19, 2006. In his affidavit, Hefton states that on September 14, 2006, he met with two Viscern Board members, who delivered the September 14 letter to him, notifying him of his termination and instructing him to "leave the premises and to come back on Saturday, September 16, 2006 to clean out [his] office." (Hefton affidavit ¶7). In addition, Hefton states that subsequent to his "termination" on September 14, 2006, he was not an agent, employee, manager or officer of Viscern nor had he recommenced any employment with Viscern. (Hefton affidavit ¶8).

Holding opposes the motion first on the grounds that the evidence of Hefton's misconduct as CEO that emerged subsequent to the September 14, 2006 termination letter should be allowed to relate back to the September date, thereby justifying Holding in exercising its "For Cause Repurchase Right" as of that date. Second, Holding argues that the September 14, 2006 letter was not a "Termination Notice", but rather one of a series of letters in which Viscern attempted to negotiate a settlement with Hefton regarding his termination as CEO of the company. As such, Holding argues that the September 14 letter, along with the two other letters, are inadmissible to support Hefton's motion to dismiss as they are evidence of settlement negotiations.

In support of its position, Holding submits an affidavit from John Henry Moulton (a member of the Board of Directors of Viscern, Inc.), a redacted copy of an October 30, 2006 letter from Hefton's attorney to Viscern regarding settlement which was not

5

submitted by Hefton, a redacted copy of the December 19, 2006 letter, the results of the internal audit concerning Hefton's conduct, the Viscern Board resolution regarding the requirement of Board approval for expenditures greater than $50,000, and the Employment Agreement.

The redacted copies of the October 30 and December 19 letters that Holding submits both contain a heading which states "For Settlement Purposes only Pursuant to Rule 408 of the Texas Rules of Evidence" (Holding Exhibits A and B), a heading which is not included in the letter copies submitted by Hefton. Holding thus claims that Hefton's versions of the letters are incomplete.[2]

In the affidavit, Moulton avers that Viscern's letters on September 14, October 16, and December 19, 2006 were three settlement proposals sent to Hefton in an attempt to negotiate "an amicable separation" (Moulton affidavit ¶3) between Hefton and Viscern.

Moulton further avers that at the September 14, 2006 meeting he and another Board member met with Hefton to notify him of his termination from his CEO position and to suggest a potential new role with the company as a consultant. Moulton also states that subsequent to the meeting, Hefton continued in his role as a Board member and continued to attend Board meetings from September 2006 to January 2007.

In reply, Hefton argues that since Viscern terminated him on September 14, 2006 and did not subsequently re-employ him, he could not be re-terminated in February 2007. Hefton argues that the three letters are admissible under applicable New York law, which deems documents admissible even if they were prepared in the context of settlement

---

[2] Although these headings refer to Texas Rule of Evidence 408, that provision is virtually identical to CPLR § 4547, which Holding acknowledges applies here.

6

negotiations so long as they are used to prove matters other than liability or the amount of damages.

## Discussion

As a preliminary matter, contrary to Holding's position, the September 14, October 16, and December 19 letters should not be excluded under CPLR 4547 as either evidence of offers to compromise a claim or as statements or conduct made during settlement negotiations. CPLR § 4547 excludes evidence of compromise or settlement negotiations only to the extent that such evidence is used as "proof of liability or invalidity of a claim or the amount of damages." Applying the rule here, while the letters are relevant to the timing of Hefton's termination, they do not contain evidence as to the validity of Holding's claim, and in particular, whether Holding had the right to terminate Hefton for cause under the relevant agreements. Accordingly, the letters may be considered on this motion.

On a motion pursuant to CPLR 3211 (a) (7) for failure to state a cause of action, the complaint must be terminated liberally construed in the light most favorable to the plaintiff, and all factual allegations must be accepted as true. Guggenheim v. Ginzburg, 43 NY2d 268 (1977); Morone v. Morone, 50 NY2d 481 (1980). At the same time, "'[i]n those circumstances where the legal conclusions and factual allegations are flatly contradicted by documentary evidence they are not presumed to be true or accorded every favorable inference'" Morgenthow & Latham v. Bank of New York Company, Inc., 305 AD2d 74, 78 (1st Dept 2003), quoting, Biondi v. Beekman Hill House Apt. Corp., 257 AD2d 76, 81 (1st Dept 1999), aff'd, 94 NY2d 659 (2000). In such cases, "the criterion becomes 'whether the proponent has a cause of action, not whether he has stated

7

one.'" Id., quoting, Guggenheimer v. Ginzburg, 43 NY2d at 275. However, dismissal based on documentary evidence may result "only where 'it has been shown that a material fact as claimed by the pleader...is not a fact at all and ... no significant dispute exists regarding it.'" Acquista v. New York Life Ins. Co., 285 AD2d 73, 76 (1st Dept 2001), quoting, Guggenheimer v. Ginzburg, 43 NY2d at 275.

"Construction of an unambiguous contract is a matter of law, and the intention of the parties may be gathered from the four corners of the instrument and should be enforced according to its terms." Beal Sav. Bank v. Sommer, 8 NY3d 318, 324 (2007); see Vermont Teddy Bear Co., Inc. v. 538 Madison Realty Co., 1 NY3d 470, 475 (2004).

Under the unambiguous terms of the Employment Agreement, an employee may be terminated with or without cause, upon the issuance of Notice of Termination which includes the specific termination provision relied on and the date of termination. See Employment Agreement, Section 3(e).[3] Here, the September 14 letter served as a Notice of Termination, as it unequivocally terminated Hefton from his employment and identified Section 4(a) of the Employment Agreement, entitled "Obligations of the Company upon Termination Without Cause or For Good Reason," as the specific termination provision, and specified that Hefton was terminated as of the date of September 14 letter.

Holding contends that the September 14 letter cannot serve as a Notice of Termination as it is only one document in a series of settlement documents between the parties. However, while the September 14 letter contains language suggesting that the parties were negotiating issues concerning Hefton's entitlement to compensation and

---

[3]Section 3(e) also requires, when applicable, that the facts and circumstances claimed to provide the basis for termination be set forth it reasonable detail; however, under Section 3(c) this requirement applies only to for cause terminations.

8

benefits, the first paragraph of the September 14 letter unequivocally terminates Hefton.[4] Likewise, the opening paragraphs of the October 16 and December 19 letters state that Hefton was terminated as of September 14, and refer to September 14 as the "Termination" or "Separation" date, and reflect that the negotiations concerning Hefton's compensation and benefit package were continuing.

Furthermore, Holding provides no evidence refuting the documentary evidence demonstrating that Hefton was terminated on September 14. Specifically, evidence that Hefton attended Board meetings after September 14 and that the proposed Consulting Agreement was annexed to the September 14 letter, does not controvert documents showing that Hefton was no longer an employee of Viscern after September 14. In fact, according to Moulton's affidavit that Hefton was permitted to attend Board meetings as the holder of 5% of Holding's stock. Furthermore, the language of the proposed Consulting Agreement states that a consultant is not an employee, and Section 1.5 of the Consulting Agreement requires that the signer acknowledge and agree that "he is not an employee of [Viscern] or any of its subsidiaries or affiliates" and that the "Consultant will perform all services for the Company as an independent contractor...."

Next, the documentary evidence establishes that the right to repurchase only arises when a Management Stockholder, like Hefton, is terminated for cause, or when an

---

[4] Other provisions of the letter also show that Hefton was terminated on September 14. For example the letter states that: "It shall be deemed that you resigned...from your position as the Chief Executive Officer of the Company and all other positions as an employee, manager and officer of the Company, in each case effective as of the Termination Date;" 2) "As of the Termination Date you acknowledge that the termination of your employment and other positions with the Company is valid and effective and effected in accordance with applicable law"; 3) "In consideration of the foregoing provisions of this letter, ... you hereby release and forever discharge Holding[ and Viscern]...,"; and 4) "In return for this Separation Agreement, you will receive consideration beyond that to which you were already entitled before entering into this Separation Agreement."

9

employee resigns (See Section 3.3 (a) & (b) of Stockholders' Agreement). Since Hefton was terminated on September 14, 2006, without cause, it appears that neither subsection (a) nor (b) applies, and the right to repurchase Hefton's stock was not triggered. Furthermore, even assuming arguendo, that Holding retained a repurchase right after terminating Hefton on September 14, Holding's failure to exercise any repurchase right within the required thirty day period after the termination date, precludes its exercise of such right.[5]

Finally, Holding's argument that the after-acquired evidence of Hefton's wrongdoing should relate back to the September 14, 2006 termination date is unavailing. In support of its argument, Holding relies primarily on McKennon v. Nashville Banner Publ'g Co., 513 U.S. 352 (1995), an action brought by an employee against her employer under the Age Discrimination in Employment Act ("ADEA"). At issue in McKennon was whether evidence of the employee's misconduct which was learned during discovery barred the employee's claims. In holding that after acquired evidence of an employee's wrongdoing would not bar the remedy of back pay but would preclude the employee from seeking reinstatement and front pay, the court balanced the "legitimate interest" of the employer which requires that "the wrongdoing of the employee be taken into account" against the ADEA's objective of, inter alia, "penalizing [employer's] for employment decisions that spring from age discrimination." 513 U.S. at 361-362.

Contrary to Holding's argument, the legal principles set forth in McKennon do not provide a basis for allowing it to use after acquired evidence of misconduct by Hefton to avoid the conditions and obligations set forth in its agreements with him. The equities

---

[5] The subsequent letter from Viscern to Hefton, which contained a repurchase notice, was dated October 16, 2006, more than thirty days after Hefton's September 14 termination.

10

and policies involved in McKennon do not come into play in this action, which does not concern age discrimination claims or the right of an employer to terminate an employee for wrongdoing, but rather an employer's contractual right to repurchase an employee's stock following his termination.

The other cases relied on by Holding are also inapplicable as they involve wrongful discharge claims in which the issue concerned whether an employer could use after acquired evidence of wrongdoing by an employee to defend an employee's termination. See e.g., Bomapane v. Enzolabs, Inc., 160 Misc2d 315 (Sup Ct, Suffolk Co. 1994)(employer may defend wrongful discharge claim based on evidence not known at time of termination); Beck v. Fybern Holding Corp., 238 AD 25 (4th Dept 1933)(holding that discharge of employee can be justified by record even if sufficient reason not given for discharge at time of termination).

Accordingly, as the documentary evidence demonstrates that there is no basis for the relief sought in the complaint, it must be dismissed.

## Conclusion

In view of the above, it is

ORDERED that Hefton's motion to dismiss is granted; and it is further

ORDERED that the Clerk is directed to enter judgment dismissing the complaint in its entirety.

DATED: August / 2007

_____
J.S.C.