FILE COPY

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
VISCERN HOLDING CORPORATION,                         :

                Plaintiff,                      :        Index No.: 600575/2007

        v.                                         :

CARL W. HEFTON,                                      :

              Defendant.                      :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


### DEFENDANT'S MEMORANDUM OF LAW
### IN SUPPORT OF MOTION TO DISMISS COMPLAINT


STEVEN D. KARLIN
Platzer, Swergold, Karlin, Levine, Goldberg & Jaslow, LLP
Attorneys for Defendant
1065 Avenue of the Americas - 18th Floor
New York, New York 10018
212-593-3000

## RELEVANT BACKGROUND FACTS

Annexed to the motion to dismiss submitted by defendant Carl W. Hefton ("Defendant" or "Mr. Hefton") is Mr. Hefton's affidavit which discusses in greater detail the background events. The contents of that affidavit are incorporated herein by reference. The purpose of this statement of Relevant Background Facts is to summarize the undisputed facts – entirely supported by documentary evidence – which mandate dismissal of the Complaint[1].

The Complaint, in the first instance, is based entirely upon the alleged repurchase right set forth in Section 3.3(a) of the Stockholders Agreement and, in fact, the Complaint quotes that exact language (see, ¶ 5 of the Complaint). The plaintiff's option to repurchase Mr. Hefton's shares expressly expires by its own terms, unless exercised by the plaintiff by "delivery of a Repurchase Notice to [Mr. Hefton] no later than thirty (30) days following [Mr. Hefton's] termination". *See*, ¶ 5 of the Complaint. The plaintiff acknowledges that the Repurchase Notice was given on February 16, 2007. *See*, ¶ 7 of the Complaint. Accordingly, to fall within the time for the exercise of its option, the plaintiff has attempted to rewrite history, ignore or attempt to conceal facts, and has alleged that Mr. Hefton was "terminated" on February 16, 2007 – just a few days before plaintiff launched this frivolous action. All of the causes of action asserted by the plaintiff arise from, and are dependent upon, plaintiff's allegation that the exercise of its option occurred within thirty (30) days of Mr. Hefton's termination – which plaintiff alleges occurred simultaneously with the Repurchase Notice on February 16, 2007. *See*, ¶ 6 of the Complaint.

The plaintiff is wrong. The plaintiff's own documents conclusively establish that Mr.

---

[1]    Capitalized terms in this Memorandum of Law shall have the same meanings ascribed to them in Mr. Hefton's affidavit and in the Notice of Motion, unless otherwise indicated.

Hefton's employment was terminated by the plaintiff on September 14, 2006. The September 14th Letter – personally handed to Mr. Hefton at a meeting with the plaintiff's Chairman of the Board – was unequivocal and unambiguous. Regardless of the terms one wishes to use to describe the substance of the September 14th Letter, under its peremptory language Mr. Hefton was: "fired"; "canned"; "terminated". Mr. Hefton was then, literally and figuratively, "shown the door" when the Chairman of the Board told him to leave the premises that day and to return two days later on Saturday to "clean out" his office. Mr. Hefton's termination on September 14, 2006 was then reconfirmed *by the plaintiff* in the October 16th Letter. The plaintiff – apparently to make sure there was no misunderstanding the termination of Mr. Hefton, delivered a *third* letter (the December 19th Letter) in which the plaintiff's own words, once again, reconfirmed Mr. Hefton's termination.

Mr. Hefton was terminated on September 14, 2006 and dutifully cleaned out his office on Saturday, September 16, 2006 as plaintiff demanded. Following his termination, Mr. Hefton never again was an agent, employee, manager or officer of Viscern and never held himself out as such.

Plaintiff's Complaint – based as it is upon a phony allegation of termination on February 16, 2007 – is fraudulent, frivolous, "flatly contradicted by documentary evidence" and must be dismissed.

## PRELIMINARY STATEMENT

*"There was no doubt that Marley was dead. This must be distinctly understood . . ." – Dickens, Charles, A Christmas Carol*

Hefton was terminated on September 14, 2006. Of that there can be no doubt. We know that from the very words used by the plaintiff to terminate Mr. Hefton. And, oh what unequivocal and all inclusive words they were! There was nothing half-hearted about Mr. Hefton's termination; there was no beating about the bush by this plaintiff. No, the plaintiff in unabashed, and abundantly clear language, stated *on September 14, 2006:*

> "[Plaintiff] hereby notifies you [*i.e.* Mr. Hefton] that you are terminated from your position as the Chief Executive Officer of [plaintiff] and *all other positions* held as agent, employee, manager and officer of [plaintiff] *effective immediately* (the "Termination Date") [emphasis added]".

September 14 Letter (Defendant's Exhibit B to the Motion to Dismiss).

On the off-chance that anyone could possibly misunderstand the peremptory nature of the termination noticed on, and effective, September 14, 2006, plaintiff delivered the October 16 Letter – a similarly unequivocal and unambiguous *reaffirmation* of the September 14, 2006 termination date:

> "[Plaintiff] previously notified you [*i.e.* Mr. Hefton] *on September 14, 2006* that you were terminated from your position as the Chief Executive Officer of [plaintiff] and all other positions held as an agent, employee, manager and officer of [plaintiff] effective *as of such date* (the "Termination Date") [emphasis added]"

October 16 Letter (Defendant's Exhibit C to the Motion to Dismiss).

The plaintiff, however, is too modest. Apparently unsure about its ability to accurately portray and convey its prior termination language, plaintiff again wrote, and delivered to, Mr.

Hefton a letter. Accordingly, in the December 19 Letter the plaintiff – once more – reiterated, restated and reasserted that Mr. Hefton had been terminated on September 14, 2006:

> [Plaintiff] previously notified you [*i.e.* Mr. Hefton] *on September 14* (the "Separation Date") that you were terminated from your position as the Chief Executive Officer of the Company and all other positions held as an agent, employee, manager and officer of [plaintiff] *effective as of the Separation Date* [emphasis added].

December 19 Letter (Defendant's Exhibit "D" to the Motion to Dismiss).

Now, much like the resurrection of old Jacob Marley in the form of an apparition, the plaintiff has attempted to resurrect Mr. Hefton in the form of an employee of the plaintiff, only to once again terminate him – allegedly on February 16, 2007 (*see*, ¶6 of the Complaint).

But this is not a work of fiction (though that word could loosely be applied to the allegations in the Complaint), and there are no ghosts and there are no resurrections. Mr. Hefton was undeniably terminated on September 14, 2006. The plaintiff's own words – on, not one (1), not two (2), but three (3) separate occasions – incontrovertibly establish such date as the date of termination. The plaintiff's allegations in the Complaint further establish the expiration of plaintiff's option to purchase Mr. Hefton's shares prior to its purported exercise. The plaintiff has no cause of action and the Complaint must be dismissed.

## POINT I

### DOCUMENTARY EVIDENCE CONCLUSIVELY ESTABLISHES THAT PLAINTIFF "TERMINATED" DEFENDANT'S EMPLOYMENT ON SEPTEMBER 14, 2006

As a preliminary matter, a motion under CPLR 3211(a)(1) by its very terms permits the introduction of documentary evidence. Such documentary evidence may take numerous forms, but for purposes of the Motion to Dismiss before this Court, correspondence signed by the plaintiff is certainly included. *WFB Telecommunications, Inc. v. Nynex Corp.*, 188 A.D.2d 257, 590 N.Y.S.2d 460 (1st Dept., 1993) (finding that documentary evidence, including *letters* from plaintiff's counsel, constituted undisputed proof of failure to state claim for *prima facie* tort); *Robinson v. Robinson*, 303 A.D.2d 234, 235, 757 N.Y.S.2d 13, 15 (1st Dept., 2003) (documents considered on 3211(a)(1) motion to dismiss "include[d] correspondence"). Indeed, even affidavits are sufficient to constitute documentary evidence where they demonstrate that a material fact alleged by a plaintiff is "not a fact at all". *Mayerhoff v. Timenides*, 269 A.D.2d 369, 703 N.Y.S.2d 200, 201 (2nd Dept., 2000).

Once a properly supported motion under CPLR 3211(a)(1) is interposed, the facts pleaded are *not* to be presumed true, or even given favorable inferences, if they are "flatly contradicted" by documentary evidence. *Morgenthow & Latham v. Bank of New York*, 305 A.D2d 74, 78, 760 N.Y.S. 2d 438, 441 (1st Dept., 2003). The motion to dismiss should be granted "where the essential facts have been negated beyond substantial question by the affidavits and evidentiary matter submitted". *Biondi v. Beekman Hill House Apartment Corp.*, 257 A.D.2d 76 81, 692 N.Y.S.2d 304, 308 (1st Dept., 1999) *aff'd*, 94 N.Y.2d 659, 731 N.E.2d 577, 709 N.Y.S.2d 861 (2000). The question becomes whether the plaintiff *has* a cause of action, not merely whether he stated one. *Id.*

The documentary evidence in this case is, of course, three (3) separate admissions by the

plaintiff that it *terminated* Mr. Hefton on September 14, 2006. But the evidence goes beyond mere admissions. The letter of September 14, 2006 is – factually and indisputably – the very act of termination, from which all relief alleged in the Complaint flows. And such act occurred on September 14, 2006 as reiterated by the plaintiff in the October 16 Letter and reiterated again in the December 19 Letter. Indeed, Mr. Hefton's affidavit wholly comports with that conclusion, and establishes that he was "shown the door" on September 14, 2006, permitted to – and did – clean out his desk on Saturday, September 16, 2006 and never again worked for the plaintiff. Plaintiff's allegation that termination occurred on February 16, 2007 is thus "flatly contradicted", notwithstanding plaintiff's all too transparent motive to rewrite history.

## POINT II

## PLAINTIFF FAILED TO EXERCISE ITS OPTION
## ACCORDING TO ITS EXPRESS TERMS AND CONDITIONS

The Stockholders Agreement annexed to the Complaint is as unambiguous and unequivocal as plaintiff's termination of Mr. Hefton on September 14, 2006. Section 3.3(a) of the Stockholders Agreement essentially gives the plaintiff an option to repurchase Mr. Hefton's shares, exercisable by delivery to Mr. Hefton of a written Repurchase Notice *"no later than thirty (30) days"* following his termination. The Complaint plainly alleges that the Repurchase Notice was given on February 16, 2007. Since there is uncontroverted and indisputable evidence that Mr. Hefton was terminated on September 14, 2006, the purported exercise of the option by the plaintiff was patently untimely. It is hornbook law that an option must be exercised "in accordance with its terms *within the time* and in the manner specified in the option [emphasis added]". *Kaplan v. Lippman*, 75 N.Y.2d 320, 325, 552 N.E.2d 151, 153, 552 N.Y.S.2d 903, 907 (1990); *Mohring Enterprises, Inc. v. HSBC Bank USA*, 291 A.D.2d 385, 736 N.Y.S.2d 888 (2nd Dept., 2002).

Likewise, express conditions in a contract, such as the requirement here – that plaintiff shall have a right to repurchase Mr. Hefton's shares upon the delivery of the Repurchase Notice within thirty (30) days of Mr. Hefton's termination – *must be literally performed*. *Oppenheimer & Co. v. Oppenheim, Apple, Dixon & Co.*, 86 N.Y.2d 685, 660 N.E.2d 415, 636 N.Y.S.2d 734 (1995). Moreover, it is notable that the occurrence of the condition was – at all times – within the sole province, dominion and control of the plaintiff. *See, National Fuel Gas Distribution Corp. v. Hartford Fire Insurance Co.*, 28 A.D.3d 1169, 1170, 814 N.Y.S.2d 436, 437 (4th Dept., 2006) (the existence of an express condition is more likely to be found where, *inter alia,* the event is within the

obligee's control).

       The option having expired – or the condition having failed to occur – Mr. Hefton simply has no obligation to tender his shares to the plaintiff and plaintiff has long since lost any repurchase right it may have had.

## CONCLUSION

Because documentary evidence unequivocally establishes (i) that plaintiff terminated Mr. Hefton on September 14, 2006, which termination was reaffirmed by the plaintiff in subsequent writings on October 16, 2006 and on December 19, 2006; (ii) that plaintiff's option to repurchase Mr. Hefton's shares required its exercise within thirty (30) days of the termination; and (iii) that plaintiff has admitted in its pleading that it did not attempt to exercise its option until more than five (5) months following the unequivocal termination of Mr. Hefton's employment, the plaintiff has not – and cannot – state or establish a claim upon which relief can be granted arising under its alleged repurchase right.  The Complaint, therefore, must be dismissed.

Dated: New York, New York
      March 8, 2007

Respectfully submitted,

By: _Steven D. Karlin_
     Steven D.  Karlin
PLATZER, SWERGOLD, KARLIN, LEVINE,
GOLDBERG & JASLOW, LLP
1065 Avenue of the Americas - 18th Floor
New York, New York 10018
212-593-3000

**ADMISSION OF SERVICE**

I, _Jim Pirone_____, by my signature below, state that I am authorized to admit and accept, and do admit and accept, service of a copy of the within Memorandum of Law in Support of Motion to Dismiss Complaint dated March 8, 2007 on behalf of Nixon Peabody, LLP, counsel for the Plaintiff, this 8th day of March, 2007.

NIXON PEABODY LLP
437 MADISON AVENUE
NEW YORK, NY  10022

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

VISCERN HOLDING CORPORATION,     :

              Plaintiff,     :     Index No.: 600575/2007

        v.     :

CARL W. HEFTON,     :

            Defendant.     :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


## DEFENDANT'S REPLY MEMORANDUM OF LAW
## IN SUPPORT OF MOTION TO DISMISS COMPLAINT


STEVEN D. KARLIN
Platzer, Swergold, Karlin, Levine, Goldberg & Jaslow, LLP
Attorneys for Defendant
1065 Avenue of the Americas - 18th Floor
New York, New York 10018
212-593-3000

## PRELIMINARY STATEMENT

To drive home the irrefutable point that Mr. Hefton's[1] employment had been terminated, the defendant's Memorandum of Law quoted from Charles Dickens' description of Jacob Marley having been, in effect, dead as a doornail. However, after reviewing plaintiff's opposition argument to the contrary, perhaps defendant would have been better served by a different author:

> *"When I use a word, Humpty Dumpty said, in rather a scornful tone, it means just what I choose it to mean – neither more nor less".*

Carroll, Lewis, *Through the Looking Glass.*

For it is only in a Carrollian universe that the plaintiff could argue, with a straight face, that an unconditional, unequivocal written *termination of employment* which was twice unconditionally and unequivocally reiterated, again in writing, never really happened – that it was merely a "suggest[ion]" that Mr. Hefton "resign". That is essentially the only argument in opposition raised by the plaintiff and it runs directly counter to the law. In this case, the law of physics. In this universe – as opposed, perhaps, to the universe populated by Lewis Carroll characters – time runs in only the forward direction. The alleged discovery of "cause" by the plaintiff[2] subsequent to the termination of Mr. Hefton's employment on September 14, 2006 cannot undue past events. Viscern essentially admits it had no cause to terminate Mr. Hefton on September 14, 2006, yet did so

---

[1]     Terms used in this Reply Memorandum of Law shall have the same meanings ascribed to them as in defendant's Memorandum of Law in Support of his motion to dismiss unless otherwise indicated.

[2]     Notably, even if the termination, which occurred on September 14, 2006, somehow spoke as of the discovery of "cause", the plaintiff claims it received notice of such "cause" on December 8, 2006 – much more then the thirty days before the plaintiff served its Notice to Repurchase.

G:\wpdocs\working\Clients\CARL HEFTON\Reply Memorandum.wpd

anyway. Now Viscern asks the court to find that, as a matter of law, it may terminate Mr. Hefton again on February 16, 2007 and thereby trigger an alleged repurchase right which arises only upon – and must be exercised within thirty (30) days of – a *termination* for cause. No matter what meanings the plaintiff chooses to give the word "termination" – or the phrase "termination for cause" – by any definition such termination can only happen once. Absent a new employer-employee relationship there could be no "termination for cause" on February 16, 2007.

As a result, this motion presents the simple legal inquiry of whether Mr. Hefton's employment can be terminated for cause at a time when he was no longer an employee. No degree of sophistry or rhetoric should divert the court's focus from this sole dispositive issue.

## POINT I

### THE COURT IS NOT REQUIRED TO ACCEPT
### THE PLAINTIFF'S ALLEGATIONS AS TRUE

The plaintiff is flat out incorrect in asserting that under the posture of this case the court is required to accept the allegations of the complaint as true. Once documentary evidence is produced "flatly contradict[ing]" the legal conclusions and factual allegations of the complaint, such conclusions are "not presumed to be true or accorded every favorable inference". *Morgenthow and Latham v. Bank of New York*, 305 A.D.2d 74, 78, 760 N.Y.S.2d 438, 440 (1st Dept., 2003).

Here, the plaintiff alleges that Mr. Hefton was terminated for cause on February 16, 2007 which simply could not be, where plaintiff's own writings unequivocally established that Mr. Hefton's employment with Viscern was terminated – for whatever reason – on September 14, 2006.

## POINT II

### SEPTEMBER 14, 2006 IS THE UNDISPUTED DATE
### OF MR. HEFTON'S TERMINATION OF EMPLOYMENT
### AND THEREFORE DEFENDANT WAS NOT EMPLOYED
### WITH, AND COULD NOT BE TERMINATED BY,
### PLAINTIFF THEREAFTER FOR ANY REASON

Plaintiff cites the unremarkable line of cases permitting an employer – in a wrongful discharge case – to justify the discharge based on facts discovered subsequent to the discharge. Of course, the issue here is not a wrongful discharge or a claim involving the *propriety* of the discharge. Indeed, those issues are – as previously stated in defendant's Memorandum of Law – a matter for the ongoing arbitration. Rather, the issue here is the *fact* of the termination (*i.e.* did it or did it not occur on September 14, 2006). Plaintiff's unpersuasive argument that the facts and dates may change because of subsequent events is perhaps best viewed in the context of various analogies. For

instance, in the case of an appeal of a judgment, the respondent may urge affirmance on any basis which fairly appears in the record – whether argued by the respondent below, considered by the lower court or flatly rejected. The appellant, however, may not seek reversal on an issue not raised below. Similarly, a discharge by the employer may be supported by facts which occurred at or before the discharge but which come to light after the discharge which – if known by the employer – would have supported the discharge. However, that rule does not permit plaintiff to now change the facts – the actual occurrence, and the date, of termination of Mr. Hefton's employment – which plaintiff, itself, created.

Plaintiff simply refuses to admit the obvious. Again, by way of analogy, in an action for divorce, a necessary element is that there be a marriage; in a landlord-tenant dispossess proceeding, the landlord must plead and prove the existence of a lease. Likewise, it is self-evident that there must be an employment relationship at the time of an alleged termination of that employment, whether for "cause" or any other reason. *There can't be a termination of employment when there is no employment.* The plaintiff has not – indeed, cannot – establish such an employment relationship subsequent to September 14, 2006. Plaintiff offers not the slightest evidence that any employment relationship existed between Viscern and Mr. Hefton subsequent to September 14, 2006. There are no W-2 statements annexed to plaintiff's opposition papers, there are no withholding tax statements, there are no copies of pay stubs and there is not the slightest evidence of payroll records indicating that Mr. Hefton was employed by Viscern subsequent to September 14, 2006. What does exist, however, are numerous written statements from Viscern firing – and confirming and re-confirming the firing – of Mr. Hefton from his employment with Viscern on September 14, 2006.

## POINT III

### THE PLAINTIFF'S ADMISSIONS ESTABLISHING THAT MR. HEFTON'S EMPLOYMENT WAS TERMINATED ON SEPTEMBER 14, 2006 ARE PATENTLY ADMISSIBLE

The initial problem with plaintiff's argument that its written termination of Mr. Hefton (the September 14 Letter) and its two (2) subsequent written reiterations/admissions of that termination (the October 16 Letter and the December 19 Letter) are inadmissible as "settlement negotiations", is plaintiff's willingness to truly wander through a Lewis Carollian maze of interpretation and definition. First, plaintiff's September 14 Letter was not an *admission* to the termination of Mr. Hefton's employment or a reference to a "prior termination". It was an action in and of itself. The September 14 Letter "*hereby* notifies [Mr. Hefton] that you are terminated . . . effective immediately [emphasis added]". The plaintiff then coupled that action of termination with a detailed, *enumerated* proposal for a severance package. None of the *enumerated* paragraphs in the proposed severance package affected the *non-enumerated paragraph* which constituted the explicit action of terminating the employment of Mr. Hefton. Thus, *plaintiff created* the predicate for the severance proposal by unconditionally terminating Mr. Hefton, added to it a separate "compromise proposal" and accordingly now asks the court to rule that plaintiff's written termination of Mr. Hefton is inadmissible because plaintiff appended a severance package proposal. Whether the analogy of "having one's cake and eating it", or the similar, hackneyed example of the murderous orphan pleading for leniency applies[3], the fact is that nothing in CPLR 4547 or Federal Rule of Evidence

---

[3] These aphorisms apply equally to the absence of any evidence or allegations that anything prevented Viscern from conducting its investigation (Viscern's Exhibit "D") first and then terminating Mr. Hefton's employment if sufficient cause was found to exist. Viscern's

408[4].was intended to permit Viscern to take the affirmative act of terminating Mr. Hefton's employment, make a simultaneous proposal of a "severance package" and then claim that the evidence of the act of termination is inadmissible because it is coupled with such a severance proposal. *See, e.g., Bankcard America, Inc. v. Universal Bancard Systems*, Inc., 203 F.3d 477, 484 (7th Cir., 2000), holding that it would be "an abuse of Rule 408" to permit a party to lull another into breaching a contract and then prevent an explanation of that breach because the actions "lulling" the party into the breach occurred around the settlement table.

Of course, notwithstanding Viscern's unsupportable attempt to bar evidence of its affirmative actions in terminating the employment of Mr. Hefton, all such statements and admissions are admissible to prove matters *other* than liability or the amount of damages even where they occurred in a true context of settlement negotiations.  CPLR 4547.  *Hill v Arnold,* 226 A.D.2d 232, 640 N.Y.S.2d 892 (1st Dept, 1996).  Here, the September 14 Letter, the October 16 Letter and the December 19 Letter are offered to establish neither liability, nor the amount of damages.  Those exhibits to Mr. Hefton's motion to dismiss are offered to establish the date of Mr. Hefton's termination of employment by Viscern and Viscern's continued reiterations and admissions as to that date.  As such, the written act of termination of Mr. Hefton's employment with Viscern, and Viscern's written reiterations and admissions are patently admissible.

---

impulsiveness and lack of circumspection are insufficient bases upon which to seek relief from its own unfettered actions in terminating Mr. Hefton's employment on September 14, 2006.

[4]        CPLR 4547 is based on Federal Rule of Evidence 408.

## CONCLUSION

Viscern made a deliberate choice to terminate Mr. Hefton's employment on September 14, 2006 even though – as Viscern tacitly admits – it was unaware of any cause. In so doing, Viscern made a deliberate decision to forego its right to repurchase stock from Mr. Hefton because that right is triggered only by a "termination for cause" and only if notice of the exercise of that right is then given, in writing, within thirty (30) days thereafter. Viscern's belated decision, more than five months later, to attempt to exercise its repurchase right by *literally pretending* the initial employment termination never happened could not be a more transparent attempt to disingenuously rewrite history. Viscern's use of subsequent events is so contrary to the undisputed facts and such an act of utter convenience, that Viscern is ultimately caught, and hoisted, on its own petard. For even Viscern admits that it was in possession of knowledge of alleged "cause" on December 8, 2006 (see Viscern's Exhibit "D" to its opposition papers) yet still delayed more than sixty(60) days before tardily – and ineffectively – attempting to exercise its repurchase rights on February 16, 2007.

Simply put, the predicate for Viscern's cause of action was notice within thirty (30) days of a termination for cause of Mr. Hefton's employment. But Mr. Hefton had been previously terminated by Viscern and had not been employed with Viscern at the time of, and for over five months before, Viscern's attempt to terminate him for cause and exercise its repurchase rights. As

a result, Viscern has no cause of action and this complaint must be dismissed.

Dated: New York, New York
     April 10, 2007

                        Respectfully submitted,

                    By: _Steven D. Karlin_
                      Steven D. Karlin
                      Platzer, Swergold, Karlin, Levine,
                      Goldberg & Jaslow, LLP
                      Attorneys for the Defendant
                      1065 Avenue of the Americas - 18th Floor
                      New York, New York 10018
                      212-593-3000

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

VISCERN HOLDING CORPORATION,                          :

               Plaintiff,                          :        Index No.: 600575/2007

        v.                                   :        **AFFIDAVIT OF SERVICE**

CARL W. HEFTON,                                       :

              Defendant.                         :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

STATE OF NEW YORK    )
                      )ss.:
COUNTY OF NEW YORK  )

       Wendi Leon, being duly sworn, deposes and says:

       1.     I am not a party to the action, am over 18 years of age and reside in Queens County, New York.

       2.     On April 10, 2007 I served a copy of the Defendant's Reply Memorandum of Law in Support of Motion to Dismiss Complaint via U.S. mail, in a properly addressed envelope, and deposited same in an official depository under the exclusive care and custody of the United States Postal Service within the State of New York upon the following party:

Eugene F. Bannigan, Esq.
Nixon Peabody, LLP
437 Madison Avenue
New York, New York 10022

                                        WENDI LEON

Sworn to before me this
10th day of April, 2007

Sherri D. Lydell
Notary Public, State of New York
No. 4962981
Qualified in New York County
My Commission Expires **2/26/10**

G:\wpdocs\working\Clients\CARL HEFTON\AOS - Reply Memo of Law.wpd

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

VISCERN HOLDING CORPORATION,

Plaintiff,

- against -

CARL W. HEFTON,

Defendant.

Index No.: 600575/2007

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

Plaintiff Viscern Holding Corporation ("Plaintiff" or "Holding"), by its attorneys Nixon Peabody LLP, respectfully submits this Memorandum of Law in Opposition ("Opposition") to Defendant Carl W. Hefton's ("Hefton" or "Defendant") Motion to Dismiss the Complaint filed March 8, 2007 ("Motion to Dismiss"). In support of this Opposition, Plaintiff also submits the Affidavit of John Henry Moulton.

## PRELIMINARY STATEMENT

Relying on wholly inadmissible so called "documentary evidence" and an affidavit submitted in contravention of CPLR § 3211(a)(1), Defendant moves for dismissal of the Complaint. Stripped of its improper submissions, Defendant's motion is completely without merit.

In this contract dispute, Hefton seeks an order pursuant to NY CPLR §§ 3211(a)(1) and (a)(7) dismissing the Complaint on the grounds that the Complaint does not state a claim for which relief can be granted. The Complaint sets forth the specific factual allegations underlying Plaintiff's right to repurchase Hefton's Holding shares, as stated in the Stockholders' Agreement

10355498.5

dated December 30, 2005 ("the Stockholders' Agreement"), upon Hefton's for-cause termination

from his position as Chief Executive Officer ("CEO") of Viscern, Inc. ("Viscern" or "the

Company"). (A copy of the Complaint is attached as Exhibit A to Defendant's Motion to

Dismiss). Evidence of the scope of Hefton's misconduct was acquired only after he had

previously been discharged as CEO on September 14, 2006, and the Viscern Board of Directors

("the Board") concluded that there were sufficient facts to warrant his dismissal for cause[1].

Under universally settled principles of employment law, the Board's decision on February 16,

2006 to terminate Hefton for cause relates back to Hefton's removal as CEO on September 14,

2006, and Plaintiff is entitled to exercise its "For Cause Repurchase Right" under Section 3.3 of

the Stockholder's Agreement for Hefton's Holding stock. Because the Viscern Board was

unaware of the scope of Hefton's misconduct on September 14, 2006, the Board was prepared to

engage in a negotiated settlement concerning Hefton's termination as CEO. Consequently, the

proposals to Hefton dated September 14, 2006, October 16, 2006, and December 19, 2006

(attached as Exhibits B, C, and D to Defendant's Motion to Dismiss) were un-executed

settlement agreements designed to memorialize the terms of Hefton's discharge as CEO. As

such, these settlement letters are inadmissible evidence and are improperly before the Court.

Regardless of their admissibility, the copies submitted by Defendant are incomplete and selective

versions of the documents. Most importantly, these letters are wholly inconsequential in

determining Holding's stock re-purchase rights following Hefton's 'For-Cause' termination.

      Accordingly, based on the foregoing, as set forth in detail below, the Defendant's motion

to dismiss should be denied.

---

[1] Hefton's Employment Agreement with Viscern, Section 3(a), dated December 30, 2005, provided, among other things, that either party had the right to terminate the employment without cause at any time. ("Employment Agreement"). (Moulton Aff'd, Exhibit F).

## STATEMENT OF FACTS

### Mr. Hefton's Separation and Settlement Proposals

At a meeting on September 14, 2006, two members of Viscern's Board advised Hefton that he no longer held his position as the CEO of the company. (Affidavit of John Henry Moulton dated March 30, 2007, ¶ 4, hereinafter referred to as "Moulton Aff'd ¶"). Simultaneously, Hefton was given a settlement proposal of even date which, while reciting his termination as CEO, nevertheless offered him a three-year position as a consultant for Viscern and continuation of most welfare and benefit plans that he participated in as the CEO ("the First Settlement Proposal"). (Moulton Aff'd, ¶ 4). (A copy of the First Settlement Proposal is attached as Exhibit B to the Defendant's Motion to Dismiss).

Following the meeting on September 14, 2006 and continuing through January 2007, a series of discussions and exchange of correspondence took place between Viscern and Hefton with the purposes of negotiating the terms of Hefton's removal as CEO. (Moulton Aff'd, ¶¶ 5-7). During this period, Viscern sent Hefton two additional revised settlement proposals dated October 16, 2006 and December 19, 2006[2]. (Moulton Aff'd, ¶¶ 6-7) ("the Second Settlement Proposal" and "the Third Settlement Proposal," respectively). (Copies of these proposals are attached, in part, as Exhibits C and D, respectively, to the Defendant's Motion to Dismiss).

All three proposals were marked "EXECUTION COPY" and were prepared for the purposes of settlement. (Moulton Aff'd, ¶ 8). None of the proposals were accepted by Hefton.

---

[2] During this period, Hefton also attended regularly scheduled Board meetings. (Moulton Aff'd, ¶ 11). This contact with the Company is further evidence of Hefton's ongoing involvement with Viscern's business affairs and that the facts as set forth by Defendant are incomplete. (Defendant's Affidavit, ¶ 8). As a director, Hefton continued to be an agent of the Company. *See Ricardo v. Reyna*, 55 S.W.3d 58 (Tex. App.-Corpus Christi, 2001); *Home Advantage, Inc. v. Ronald J. Shaw, Bailey & Shaw, P.C.*, 1998 Tex. App. LEXIS 5116 (Aug. 19, 1998).

**Mr. Hefton's Misconduct**

In response to employee reports of misconduct by Hefton, Viscern hired Thacher
Associates, LLC ("TA") to conduct a forensic audit. (Moulton Aff'd, ¶ 13). On December 8,
2006, TA provided the Board with a memorandum summarizing the results of the forensic audit.
(Moulton Aff'd, ¶ 13 and Exhibit D). The audit revealed that there was a basis to conclude that
Hefton violated Viscern's established policies regarding expense reimbursement, the accrual and
use of Diners Club reward points, and the use of Viscern property for personal use. (Moulton
Aff'd, ¶ 13).

After further internal investigation, the Board discovered that Hefton back-dated to
October 2005[3] Viscern's 401(k) matching program in direct contravention of a Viscern Board
resolution to which Hefton was a signatory. (Moulton Aff'd, ¶ 14 and Exhibit E). Specifically,
just prior to Holding's purchase of Viscern, Viscern decided that it would not match employee
contributions to the Company's 401(k) plan for the period beginning October 1, 2005. (Moulton
Aff'd, ¶ 14). On March 2, 2006, the Board authorized the new 401(k) matching program to
commence with the first pay period in April 2006. (Moulton Aff'd, ¶ 14 and Exhibit E). As a
member of the Board, Hefton signed the resolution. (Moulton Aff'd, ¶ 14 and Exhibit E).
Subsequently, without advising the Board, Hefton improperly back-dated Viscern's 401(k)
matching program to October 2005. (Moulton Aff'd, ¶ 14). As a result, Viscern sustained an
expense of $128,000. (Moulton Aff'd, ¶ 14).

In a letter dated February 16, 2007, Viscern informed Hefton that he was being
terminated for cause pursuant to Section 3(c) of the Second Amended and Restated Employment
Agreement dated as of December 30, 2005. ("Employment Agreement"). (Moulton Aff'd, ¶ 16

---

[3] Holding did not even acquire Viscern until December 2005. (Moulton Aff'd, ¶ 2).

and Exhibit F). The reasons outlined in the letter detailing Hefton's misconduct included: 1) Hefton's willful and continuing disregard of specific board directions, including Hefton's decision to back-date the 401(k) Company match, which was in direct contravention to a Board resolution and required Board approval; 2) Hefton's unlawful misappropriation of Company property in taking Company-owned Diner's Club points to pay for his personal trips with his wife; and 3) Hefton's willful and continuing misappropriation of Company funds.

The letter simultaneously served as the Repurchase Notice for Holding to exercise its "For Cause Repurchase Right" under section 3.3(a) of the Stockholders' Agreement. (Moulton Aff'd, ¶ 16). This section, in relevant part provides:

> (a) <u>Management Stockholder Terminated for Cause</u>. In the event that a Management Stockholder's employment with Viscern is terminated for cause at any time ... the Corporation (or its designee) shall have the right (but not the obligation) upon delivery of a Repurchase Notice to such Management Stockholder no later than thirty (30) days after such termination of employment, to repurchase from such Management Stockholder ... all or any part of the Management Stockholder Shares owned by such Management Stockholder ... at any time ( a "<u>For Cause Repurchase Right</u>").

(Complaint, Exhibit 1).

Hefton violated his contractual obligations under the Employment Agreement as well as company policies, and the after-acquired evidence of his wrongdoing, discussed *infra*, relates back to September 14, 2006. Accordingly, Plaintiff is entitled to exercise its "For Cause Repurchase Right"and repurchase Hefton's Holding stock.

## ARGUMENT

On a motion to dismiss pursuant to CPLR § 3211, the pleading is to be afforded a liberal construction. *See*, CPLR § 3026. A court must "accept the facts as alleged in the complaint as true, accord plaintiffs the benefit of every possible favorable inference, and determine only whether the facts as alleged fit within any cognizable legal theory." *Leon v. Martinez*, 84 N.Y.2d

83, 87-88, 614 N.Y.S.2d 972, 974 (1994). *See also Residence in Madison Condo v. W.T. Gallagher & Assocs., Inc.*, 271 A.D.2D 209, 706 N.Y.S.2d 325 (1st Dep't 2000) )(all allegations in a complaint must be deemed true and all inferences flowing from such allegations must be resolved in favor of a pleader on a motion to dismiss).

Under CPLR § 3211(a)(1), a dismissal will be granted "only if the documentary evidence submitted conclusively establishes a defense to the asserted claims as a matter of law." *Leon v. Martinez*, 84 N.Y. 2d at 88. CPLR § 3211(a)(1) contemplates the same kind of hearing as upon a summary judgment motion when proof outside the pleadings is submitted. Jack B. Weinstein, Harold L. Korn & Arthur R. Miller, *New York Practice CPLR*, 2d ed. 2005. "The proponent of summary judgment must eliminate material issues of fact by producing evidentiary proof in admissible form." *Finkelstein v. Cornell Univ. Med. Coll.*, 269 A.D.2d 114, 117, 702 N.Y.S.2d 285, 288 (1st Dep't 2000) (defendant failed to meet its summary judgment burden of supporting its contentions with affidavits or documentation). Accordingly, on a motion to dismiss, the documentary evidence must be in admissible form.

Even if the documentary evidence is admissible, a defendant must meet a heavy burden in order to prevail on a motion to dismiss a complaint, and "when evidentiary material is considered, …unless it has been shown that a material fact as claimed by the pleader to be one is not a fact at all and unless it can be said that no significant dispute exists regarding it…dismissal should not eventuate." *Guggenheimer v. Ginzburg*, 43 N.Y.2d 268, 275, 401 N.Y.S.2d 182, 185 (1977).

Furthermore, where a motion to dismiss has <u>not</u> been converted to a motion for summary judgment, a court can consider an affidavit submitted by a plaintiff to remedy any defects in the complaint, but an affidavit submitted by a defendant is rarely used to defeat a claim. *Johnson v.*

*Spence*, 286 A.D.2d 481, 483, 730 N.Y.S.2d 334, 336 (2d Dep't 2001); *Henbest & Morrisey, Inc.*

*v. W.H. Ins. Agency*, 259 A.D.2d 829, 830, 686 N.Y.S.2d 207, 208 (3d Dep't 1999) (in

determining a motion to dismiss, the court "must accept the allegations of the complaint as true

and <u>ignore</u> the affidavits submitted by defendants") (emphasis added).

Hefton has attached documents used for settlement negotiation and an affidavit to

support his motion to dismiss. The settlement documents are inadmissible, and the affidavit

cannot be made the basis for a CPLR § 3211(a)(1) motion. As such, there is no admissible

documentary evidence to warrant a motion to dismiss.

**POINT I**

**AFTER-ACQUIRED EVIDENCE OF WRONGDOING WHICH WOULD HAVE
RESULTED IN DISCHARGE RELATES BACK TO SEPTEMBER 14, 2006**

Viscern removed Hefton on September 14, 2006 from his position as CEO of the

Company. (Moulton Aff'd, ¶ 4). At that time, the Board was unaware of the scope of the

misconduct that Hefton engaged in during his tenure as CEO, specifically the findings unearthed

in the TA forensic audit and the costly back-dating of the 401(k) program. (Moulton Aff'd, ¶¶ 3,

13, and 14). The Board was not cognizant of Hefton's willful disregard of the Board's directions

with regard to Viscern's 401(k) matching program. Hefton's decision to back-date the 401(k)

Company match to October 1, 2005 was in direct contravention of (i) a Board resolution dated

March 2, 2006, approving the Company match as of April 2006 and (ii) the "Matters Subject to

[Board] Approval" dated February 25, 2006 requiring board approval for non-budgeted

expenditures over $50,000. The improper back-dating resulted in a charge to the company of

$128,000. (Moulton Aff'd, ¶ 14).

Under both the Stockholders' Agreement and the Employee Agreement, Viscern was entitled to terminate Hefton for cause. Under the Stockholders' Agreement, Termination of Employment for Cause is defined as follows:

> Termination of Employment for Cause shall mean (i) the conviction of a crime involving fraud, theft or dishonesty by the Management Stockholder; (ii) the Management Stockholder's willful and continuing disregard of lawful instructions of the Board or superiors (if any), or the Management Stockholder's willful misconduct in carrying out his or her position and duties of employment; (iii) the continued use of alcohol or drugs by the Management Stockholder to an extent that, in the good faith determination of the Board, such use interferes in any manner with the performance of the Management Stockholder's duties and responsibilities as an employee of the Corporation; (v) the failure of the Management Stockholder to observer material Corporation policies generally applicable to employees of the Corporation, or (vi) the conviction of the Management Stockholder for violating any law constituting a felony (including the Foreign Corrupt Practices Act of 1977).

> (Complaint, Exhibit 1).

The Employment Agreement is similar to the Stockholders' Agreement in that it defines "Cause" under Section 3(c) as "(ii) the Employee's willful and continuing disregard of lawful instructions of the Board or superiors (if any), or the Employee's willful and continuing misconduct in carrying out his or her position and duties of employment, as determined in good faith by the Board...." (Moulton Aff'd, Exhibit F). Accordingly, Hefton's decision to back-date the 401(k) Company match in contravention to a Board resolution qualifies as a "Cause" to substantiate his termination of employment. Additionally, Hefton's violation of Viscern's policies regarding expense reimbursement, the accrual and use of Diners Club reward points, and the use of Company property for personal use also constitutes "Causes" to warrant his discharge.

New York case law establishes that an employer may defend a discharge claim on the basis of facts unknown at the time of the termination. *Bompane v. Enzolabs, Inc.*, 160 Misc. 2d 315, 321, 608 N.Y.S.2d 989, 993 (Suffolk County 1994). Where there is a sufficient reason for

an employee's discharge, even though this reason was not known to the employer when the employee was discharged, the discharge can be justified. *Beck v. Fybern Holding Corp.*, 238 A.D. 25, 263 N.Y.S. 9 (4th Dep't 1933). *See also Hutchinson v. Washburn*, 80 App.Div. 367 (2d Dep't 1903) (if "good reason for [the] discharge...actually existed at the time of discharge, although it was then unknown to the employer...[then] the employer may avail himself of such...in defense of [the] action.")

In *McKennon v. Nashville Banner Publ'g Co.*, 513 U.S. 352, 362 (1995), the employee brought an age discrimination action under the Age Discrimination in Employment Act against her employer and during discovery, the employer learned of the employee's misconduct. The Court held, *inter alia*, for an employer to rely on after-acquired evidence, the employer must first establish that the wrongdoing was of such severity it would have been sufficient grounds for termination had the employer known of such misconduct at the time of discharge. *Id.* at 362-363. The Court recognized that "[o]nce an employer learns about employee wrongdoing that would lead to a legitimate discharge, [the court] cannot require the employer to ignore the information...." *Id.* at 362. The "legitimate interests of the employer" must be taken into consideration, and an employee who engages in wrongdoing should not be able to escape the consequences of his actions simply because his actions went undetected. *Id.* at 361. *See also Walker v. Saga Commc'n, Inc.*, 11 F. Supp.2d 1292 (D. Kan. 1998); *Crawford Rehab. Serv., Inc. v. Crawford & Co.*, P.2d 540 (Colo. 1997) (the after-acquired evidence doctrine provided a complete defense to the employee's breach of implied contract claim and barred the employee from any recovery where public policy concerns under a federal statute were not raised).

While Hefton is not claiming wrongful discharge, the after-acquired evidence doctrine relied upon by many courts, including New York, *supra* at p. 8, and the United States Supreme

Court, is applicable to Plaintiff's claim regarding its right to repurchase Hefton's stock. When the Board removed Hefton from his position as CEO on September 14, 2006, the Board was unaware of the scope of Hefton's wrongdoing. (Moulton Aff'd, ¶¶ 3, 13, and 14). In fact, the magnitude of his misconduct was not brought to the Board's attention until months afterwards. (Moulton Aff'd, ¶¶ 13 and 14). Had the Board known of the extent of Hefton's misconduct on September 14, 2006, he would have been fired for cause and Holding would have exercised its "For Cause Repurchase Right" at that time.

Pursuant to the policy rationale laid out in *McKennon*, *supra*, Hefton should not be able to benefit from his wrongdoing while CEO. Hefton ought to be denied the right to retain his stock, in direct contravention of the Stockholders' Agreement, as a result of his misconduct. Not only is Viscern entitled to terminate Hefton 'For Cause,' it is contractually authorized to exercise its re-purchase rights. The fact that evidence of the scope of Hefton's misconduct was not discovered until after his termination does not negate Viscern's stock repurchase rights. To hold otherwise would contravene the Stockholders' Agreement by rendering meaningless the provision for stock re-purchase under a 'For Cause' termination. In sum, Hefton violated his contractual obligations under the Employment Agreement and Company policies. The after-acquired evidence of Hefton's wrongdoing should relate back to September 14, 2006 and Holding is entitled to exercise its "For Cause Repurchase Right" as of that date.

## POINT II

## SETTLEMENT DOCUMENTS ARE INADMISSIBLE AND IMPROPERLY BEFORE THE COURT

The letters attached to Hefton's moving papers are both improperly before the Court and irrelevant to Plaintiff's claim. (Moulton Aff'd, ¶¶ 8 and 9). Defendant's Exhibits B, C, and D are the Board's settlement letters to Hefton dated September 14, 2006, October 16, 2006, and

December 19, 2006, respectively. A cover letter, clearly marked to show that it was prepared for settlement purposes, and under which the December 19, 2006 proposal was sent to Mr. Hefton is not attached and thus the exhibit is incomplete. (Moulton Aff'd, ¶ 10).

Under NY CPLR § 4547, evidence of an offer to compromise is inadmissible as proof of liability or invalidity of a claim. Furthermore, "[c]onsistent with the courts' favor of settlement of disputes, settlement discussions are encouraged, as a matter of judicial policy, as a means of resolving litigation in the spirit of compromise, and statements made in the course of settlement negotiations are presumptively privileged." *Jones Lang Wootton USA v. LeBouef, Lamb, Greene & MacRae*, 243 A.D.2d 168, 182, 674 N.Y.S.2d 280, 290 (1st Dep't 1998). The Board intended the letters to be settlement offers; otherwise, the Board would not have discussed Hefton's proposed consulting services or attached a Consulting Agreement. Importantly, Hefton's counsel was aware that all of the letters between the Board and Hefton regarding Hefton's termination were settlement proposals. (Moulton Aff'd, ¶ 8 and Exhibit A). The letters, therefore, are protected communication and should not have been attached as exhibits. The Court should completely disregard them. Finally, not only are the letters improperly before the Court, they are wholly irrelevant to the facts of Hefton's 'For-Cause' termination and Holding's exercise of its stock re-purchase rights.

## CONCLUSION

For the reasons set forth above, the Court should deny Defendant's motion to dismiss and order Defendant to file its Answer.

10355498.5

11

Dated: New York, New York
       April 2, 2007

                              NIXON PEABODY LLP

                              *Eugene F. Bannigan / EGL*
                              Eugene F. Bannigan, Esq.
                              437 Madison Avenue
                              New York, New York  10022
                              (212) 940-3000

                              Attorneys for Plaintiff
                              Viscern Holding Corporation

10355498.5