UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
CARL W. HEFTON (individually, and on behalf of            :
DOUG TURNER, TROY FIELDS, RICHARD
BLACKMON, BOB CARTER, DALE KESLER,                        :
RICHARD CAPERTON, DAN CONWAY AND
ELLIOTT S. OSHRY), and BEN G. GILL (individually,         :     07-CV-9586 (RPP)
and on behalf of BRIAR TREE, LTD)
                                                          :
            Plaintiffs,
                                                          :
    -against-
                                                          :
VISCERN HOLDING CORPORATION,
                                                          :
            Defendant.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


**MEMORANDUM OF LAW IN SUPPORT
OF PLAINTIFFS' MOTION TO REMAND**


STEVEN D. KARLIN
Platzer, Swergold, Karlin, Levine, Goldberg & Jaslow, LLP
Attorneys for Plaintiffs
1065 Avenue of the Americas - 18th Floor
New York, New York 10018
212-593-3000

G:\wpdocs\working\CLIENTS\CARL HEFTON\Memo of Law Remand.wpd

## I. BACKGROUND FACTS

As summarized by the New York Supreme in its recent decision (Exhibit "D") Carl W. Hefton ("Hefton") was the chief financial officer of a company known as RSI and then became chief executive officer of RSI Holdings, the parent of RSI. RSI Holdings later changed its name to Viscern, Inc.("Viscern"). The defendant, Viscern Holding, Inc. ("Holding") was created to purchase Viscern's capital stock. In connection with such a purchase, a Stock Purchase And Redemption Agreement (the "Sale Agreement") was entered into by, among others, the plaintiffs as sellers [1] and Holding as the buyer, dated as of December 30, 2005. Also, dated as of December 30, 2005, was a Stockholders' Agreement between, among others, Hefton and Holding (Exhibit "B"). At the closing of the transactions contemplated by the Sale Agreement, plaintiffs and defendant agreed to escrow the sum of $2,550,000, of which there now remains in escrow the sum of $533,450 (the "Escrow"). Distribution of the Escrow is governed by an agreement dated December 30, 2005 (the "Escrow Agreement") executed by plaintiffs and defendant (Exhibit "C").

Under the Stockholders' Agreement, Hefton or his designee is entitled to serve as a director of Holding until such time as Hefton "ceases to be employed as a full time senior executive officer of [Holding] *and* his [percentage of stock ownership] is less than five percent". Stockholders' Agreement Article II, Section 2.1(b)(ii)[emphasis added]. Hefton also remained the holder of approximately 17.5% of the outstanding shares of Holding (see Exhibit "D", page 2). Hefton remained as chief executive officer of Holding until he was terminated without cause on September 14, 2006 as found by the New York State Supreme Court, Exhibit "D", page 10. Both the Escrow

---

[1] Hefton was denominated at the "Hefton Sellers' Representative" and plaintiff Ben G. Gill ("Gill") as the "Gill Sellers' Representative". This action is brought by Hefton and Gill in their individual, as well as representative capacities.

Agreement and the Stockholders' Agreement provide express consent by the parties to the exclusive jurisdiction of the state or federal courts of New York within this district with respect to actions brought in connection therewith.

Despite having expressly and unequivocally terminated the employment of Hefton on September 14, 2006 Holding demanded that Hefton tender his stock for repurchase under Article III, Section 3.3(a)of the Stockholders' Agreement. The demand was made for the first time by letter dated February 16, 2007 despite the requirement that the demand be made within thirty (30)days of termination and that, in any event, the termination had to have been for cause.

Holding then commenced an action in New York State Supreme Court to force Hefton to tender his shares under the Stockholders' Agreement. Holding could have chosen either the New York State County Supreme Court or Federal District Court under the terms of the forum selection clause. Holding expressly chose to pursue its remedy in state court.

Upon Hefton's motion to dismiss Holding's complaint on its merits, based upon documentary evidence[2], the New York State Supreme Court ordered Holding's complaint dismissed and ordered entry of a judgment by the Clerk "dismissing the complaint in its entirety".

Hefton, who had been removed as a director of Holding, having been assured by virtue of the New York State Supreme Court's ruling that he would not be forced to divest himself of his ownership interest in Holding, demanded in writing that he be reinstated to Holding's board of directors (Exhibit "E"). No response from Holding was received.

In addition, Hefton demanded that Holding account for the Escrow under the Escrow Agreement and pay to Hefton, from such Escrow, any and all funds due him in accordance with the

---

[2]    *See*, CPLR §3211(a)(1).

Escrow Agreement. Exhibit "F". Again, no response was forthcoming from Holding.

By summons and complaint dated September 24, 2007, Hefton and Gill brought an action against Holding in the New York State Supreme Court for the County of New York. Two claims were alleged in the action. One was a claim by Gill and Hefton, on behalf of themselves and others, for an accounting of the Escrow and turnover of amounts due the plaintiffs. Jurisdiction and venue were placed in New York County in accordance with the forum selection clause contained in the December 30, 2005 Escrow Agreement. *See,* Exhibit "C", §9(e). A second claim was asserted by Hefton for specific performance and injunctive relief requiring Holding to reinstate Hefton to the board of directors and to supply relevant documentation to Hefton to enable him to function as a member of the board. Jurisdiction and venue were placed in the New York County Supreme Court in accordance with the forum selection clause of the December 30, 2005 Stockholders' Agreement which created Hefton's right to a seat on Holding's board of directors. *See,* Exhibit "B", ¶7.3.

Holding removed the action to this court alleging removal jurisdiction under 28 U.S.C. §1441 on the basis of diversity of citizenship. *See,* Exhibit "A".

## II. PRELIMINARY STATEMENT

Although it is ultimately this court which will determine if diversity exists, plaintiffs do not contest that there is complete diversity between the plaintiffs and the defendant since plaintiffs are Texas citizens and defendant is a citizen of Connecticut. Nonetheless, plaintiffs contend that the action must be remanded to state court where it was commenced because (i) the claim which is removable has been joined with a claim which is not removable and subsequent to the 1990 Amendment to 28 U.S.C. §1441 (c), in the absence of federal question jurisdiction, such an action is not subject to removal, and (ii) Holding has waived its right to remove where the original action was brought in a jurisdiction and venue to which Holding had *expressly consented*.

## POINT I

### PLAINTIFFS' CIVIL ACTION CONTAINS NON-REMOVABLE CLAIMS AND MAY NOT BE REMOVED BASED ON DIVERSITY JURISDICTION

As a preliminary matter, the complaint contains two causes of action related to the sale of stock on or about December 30, 2005. One seeks recovery of proceeds in excess of $500,000 in connection with the Escrow Agreement created in connection with the Sale Agreement, and the other claim seeks reinstatement to a seat on the board of directors in connection with the Stockholders' Agreement. It is asserted that there is no real dispute that if each claim was sued on separately, the former would fall under this court's original diversity jurisdiction while the latter claim would not.

It is well settled that the removal statute should be construed narrowly. *In re Methyl Tertiary Butyl Ether (MTBE") Products Liability Litigation,* 488 F.3d 112,124 (2nd Cir., 2007). When faced with a motion to remand all doubts should be resolved in favor of remanding the matter to the State Court. *Id.*

Prior to the 1990 Amendment to 28 U.S.C. §1441 (c), the entire "civil action" could be removed even where one claim was removable and the other was not. In such instance the District Court was empowered to hear and determine all issues or remand matters not within its original jurisdiction. However, after the 1990 Amendment, the statute now provides, essentially, that the entire case can be removed where there are removable and non-removable claims *only* where removal is based upon *federal question jurisdiction*. Since Holding's assertion to a right of removal is based upon diversity, not federal question, jurisdiction and since the "civil action" contains a claim which is non-removable, *a fortiori* the case may not be removed.

All writers and legal decisions which have considered the language of 28 U.S.C. §1441 (c),

as amended, have come to the same conclusion. *Bird v Carteret Mortgage Corp.*, 2007 WL 43551, *4 (S.D.Ohio, 2007) ("As [28 U.S.C. §1441(c)] now reads, the removal of a case in which a claim over which the federal court has jurisdiction is joined with a claim over which such jurisdiction is lacking is authorized only if the former claim is [within the district court's federal question jurisdiction]"); *Bady v Estate of Woodrow*, 941 F.Supp. 71, 72 (N.D. Miss, 1996) ("It is clear from a cursory review of §1441(c) that removal based on a separate and independent claim was not available in this case and had not been available since [the 1990 Amendment]"); *Allsup v. Liberty Mutual Insurance Co,* 785 F.Supp. 325,328 (N.D.Tex, 1991) ("As a result given the lack of federal question . . . the non-removability of the workers' compensation claim doomed Liberty Mutual's removal action").

The right to remove an action containing both removable and non-removable claims arose from the pre-1990 Amendment version of 28 U.S.C. §1441(c). *See,* Siegel, *Commentary On 1988 And 1990 Revisions of Section 1441* – "The 1990 Amendment of Subdivision (c)"– , ("One purpose of [the pre-1990 Amendment version of 28 U.S.C. §1441(c)] was to permit a defendant to lift the entirety of a state-court litigation from the state court into the federal court based on the presence of at least one claim that could have invoked federal jurisdiction by itself"). And since "[w]hatever the reason for the 1990 [A]mendment, the diversity case may no longer invoke removal under [the post 1990 Amendment version of 28 U.S.C. §1441(c)] . . ." (*id.*), there manifestly no longer exists any authority for Holding to have removed this civil action containing both non-removable and removable claims where federal jurisdiction is alleged based on diversity.

*Allsup*, *supra*, is instructive. In *Allsup*, the plaintiff sued in state court for a workers' compensation claim and for a breach of good faith and fair dealing ("the bad faith claim"). The defendant removed the case on the grounds of both federal question and diversity jurisdiction. The

district court found that no federal question jurisdiction existed (*id,* at 326, footnote 1) and that the only basis for federal jurisdiction was diversity. However, the district court also found that the workers' compensation claim was a non-removable claim (*see*, 28 U.S.C. §1445(c)) and therefore turned to the question of whether – in light of the 1990 Amendment – a case could be removed based on diversity jurisdiction over one claim (the bad faith claim) where the other claim (the workers' compensation claim) was non-removable. The court determined that even if the bad faith claim would be removable standing on its own, when coupled with the patently non-removable workers' compensation claim, it "doomed" removal of the case under the 1990 Amendment to 28 U.S.C. §1441(c).

Likewise, in the case now before this court, the patently non-removable claim for reinstatement to the board of directors dooms Holding's attempt to remove the entire case.

## POINT II

### DEFENDANT HAS EXPRESSLY WAIVED ITS ASSERTED RIGHT TO REMOVE

In both the Stockholders' Agreement and the Escrow Agreement, the parties (including Holding) consented to the exclusive jurisdiction of either the New York County State Supreme Court, or the United States District Court for the Southern District of New York. Indeed, in the initial litigated action between the parties, it was *Holding* which commenced the action in reliance upon the forum selection clause of the Stockholders' Agreement, and did so in the New York State Supreme Court. No other basis for jurisdiction in New York courts (state or federal) exists, or existed then, apart from the forum selection clause.

The forum selection clauses also provide language expressly waiving the right to object to jurisdiction or venue in a court chosen pursuant to the forum selection clause. The Stockholders'

Agreement provides (¶7.3 thereof), in relevant part:

> "**EACH OF THE PARTIES IRREVOCABLY WAIVE, TO THE FULLEST EXTENT PERMITTED BY LAW, ANY OBJECTION THAT THEY MAY NOW OR HEREAFTER HAVE TO THE LAYING OF VENUE . . . IN THE COURTS OF THE STATE OF NEW YORK LOCATED IN NEW YORK COUNTY OR THE SOUTHERN DISTRICT OF NEW YORK . . .**" [capitalization and emphasis in original].

The Escrow Agreement provides similarly (§9(e) thereof), in relevant part:

> "Each party irrevocably and unconditionally waives any objection to the laying of venue . . . in (A) the Supreme Court of the State of New York, New York County, or (B) the United States District Court for the Southern District of New York . . .".

Where a party has consented to an exclusive venue for jurisdiction purposes, such party will be deemed to have waived any right to remove the case to another venue. Thus, where underwriters had contractually agreed to be sued in any court of competent jurisdiction within the United States, they were deemed to have "surrendered their right to seek removal by their acceptance of the contract clause affording plaintiffs the option of selecting the forum to litigate...". *Lavan Petroleum Co v Underwriters At Lloyds*, 334 F.Supp. 1069,1073-74 (S.D.N.Y., 1971). *Accord*, *Capital Bank and Trust Co v. Associated International Insurance Company*, 576 F.Supp. 1522 (M.D.La, 1984).

In *Koninklijke Philips Electronics v Digital Works, Inc*., 358 F. Supp.2d 328 (S.D.N.Y.,2005), a case where the forum selection clause was strikingly similar to the one in this proceeding, the defendant agreed to submit to jurisdiction in any state or federal court in New York and waived any objection to jurisdiction or venue. The district court then determined that the language of the forum selection clause constituted a waiver and mandated remand. *Id*, at 334.

By having agreed to submit to either the state or federal courts within New York, and having expressly agreed to waive any objection to the laying of venue or personal jurisdiction in such a

court, Holding has also waived any right to remove.[3]

# POINT III

### PLAINTIFFS SHOULD BE AWARDED COSTS AND EXPENSES, INCLUDING ATTORNEYS' FEES IN THE EVENT OF AN ORDER OF REMAND

The court, in granting remand, has broad discretion to award costs and expenses, including attorneys fees. 28 U.S.C.§1447(c). Indeed, no finding of bad faith is even necessary to impose such costs and fees. *Morgan Guaranty Trust Co of New York v Republic of Palau*, 971 F.2d 917,923-4 (2nd Cir, 1992).

In imposing an award of costs and expenses, one district court stated:

> "It is clear from a cursory review of §1441(c) that removal based on a separate and independent claim was not available in this case and had not been available since December 1, 1990 when the statute was amended".

*Bady v Estate of Woodrow, supra* 941 F.Supp. at 72. *Cf.,Koninklijke Philips Electronics v. Digital Works, Inc.*, *supra* 358 F.Supp.2d at 334, declining to award expenses where there was no evidence that removal was "an attempt to harass or abuse", and the defendant had at least a colorable claim for removal based upon a challenge to the enforcibility of the forum selection clause.

Here, recent history is fraught with Holding's use of litigation – and its superior financial strength – as a tool with which it is attempting to bludgeon Hefton into submission. The memoranda of law submitted in the New York State action (Exhibit "G") commenced by Holding and dismissed by the state court have been included to demonstrate the frivolous nature of Holding's claim in that

---

[3] Plaintiffs are aware that some courts have concluded that a waiver of the right to remove must be clear and unequivocal. *See*, *e.g*., *Capital Bank and Trust Company supra* at 1524. However, the Third Circuit Court of Appeals has addressed the fallacy of that position in a most convincing argument. *Foster v Chesapeake Insurance Co, Ltd.*, 933 F.2d 1207,1217(footnote15) (3rd Cir.,1991).

action. The state court immediately saw the lack of merit of Holding's claim and promptly dismissed it. The entire action brought by Holding could have been brought for no other reason than to harass Hefton. Likewise, the removal petition filed by Holding lacks merit and could only have been brought to further harass Hefton. Indeed, Holding sought removal from not only the very court whose jurisdiction Holding had consented to , but the very court in which Holding had commenced its prior, meritless action despite having had the opportunity to commence such an action in federal district court.

Under these circumstances, the court is respectfully requested to exercise its discretion in awarding the expenses of the remand motion, including legal fees, to the plaintiffs.

Dated:  New York, New York
         November 19, 2007

>            Respectfully submitted,
>            PLATZER, SWERGOLD, KARLIN, LEVINE,
>            GOLDBERG & JASLOW, LLP
>
>            By:  /s/ Steven D. Karlin
>                 Steven D. Karlin (SK-0633)
>
>            Attorneys for Plaintiffs
>            1065 Avenue of the Americas - 18th Floor
>             New York, New York 10018
>            Telephone:  212-593-3000
>            Facsimile:   212-593-0353
>            skarlin@platzerlaw.com